## GOLD SEAL BAKING COMPANY, INC., ET AL. *v.* MARGARET C. KENNEDY.

*Workmen's Compensation—Identity of Employer—Evidence.*

On an issue whether deceased, the driver of a truck, engaged in distributing the products of a baking company, was employed by the company or by an individual who had contracted with the company to buy, sell, and distribute its products, testimony by deceased's widow that deceased had seen the officials of the company as to his employment by the company, and that he supposed that he was employed by it, *held* sufficient, in connection with other facts in evidence, to go to the jury.    pp. 649-652

The evidence was also sufficient to go to the jury upon the question whether the contract between the company and the individual, for the purchase, sale, and distribution by him of the company's products, had been abandoned to the extent of changing the relations between the parties, so that thereafter such individual was not a purchaser of the company's products, but was employed by it as a distributor.            p. 652

*Decided March 23rd, 1927.*

Appeal from the Superior Court of Baltimore City (ULMAN, J.).

Claim by Margaret C. Kennedy under the Workmen's Compensation Law against the Gold Seal Baking Company, Incorporated, employer, and the Manufacturers Liability Insurance Company, insurer. From a judgment in favor of claimant, reversing a decision by the Industrial Accident Commission, the employer and insurer appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Southey F. Miles,* for the appellants.

*Robert R. Carman,* with whom were *Keech, Deming & Carman* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The question presented by this appeal is whether John J. Kennedy, the husband of the claimant, appellee in this court, was, at the time of his death, in the employment of the Gold Seal Baking Company, one of the appellants. The State Industrial Accident Commission decided this question adversely to the appellee, holding that John J. Kennedy was, at the time of his death, in the employment of John W. Dorman. On appeal to the Superior Court of Baltimore City, the jury by its verdict held that John J. Kennedy was, at the time of his death, in the employment of the Gold Seal Baking Company, and from a judgment entered thereon an appeal was taken to this court.

John J. Kennedy, on January 30th, 1926, met his death by drowning in the Baltimore Harbor at the foot of Clinton Street. At the time of the accident he was driving an automobile truck, upon the sides of which were painted "Gold Seal Cake" and "For Cake That's Real, Get Gold Seal," and also "John W. Dorman, Distributor."

Margaret C. Kennedy, when upon the stand, was asked for whom was her husband working, and she replied, "The Gold Seal Baking Company," and when asked how she knew that, she stated her husband had told her so. Her husband, she said, had been working for the Gold Seal Baking Company about a month when the accident occurred. Previous to that time he had been working for the Gardiner Bakery, driving one of its trucks, and at such time John W. Dorman was also employed by that company as "route boss." They both left the Gardiner Bakery Company. Dorman went with the Gold Seal Baking Company, and thereafter Kennedy was employed as driver of the truck, which he was driving at the time of the accident resulting in his death. These facts were all personally known to Mrs. Kennedy. She then testified that she had been told by her husband that, while Dorman was working with the Gold Seal Baking Company, he saw him, her husband, on the street in Baltimore, and told him to come to the bakery the next morning, which he did, and

he there saw Mr. **Tiralle and Mr. Scherr,** secretary and president respectively of the Gold Seal Baking Company. He said they wanted him to take a position in Washington, but he told them he would not be able to go to Washington, as he did not wish to leave his wife and home, and they then told him to come back the next morning and they would talk things over. He went the next morning and saw Messrs. Tiralle, Scherr and Dorman, and the next day he went to work. She was then asked if her husband ever said anything to her about being employed by Mr. Dorman, and she replied "No, sir, never by Mr. Dorman." Dorman, who was called to the stand by Mrs. Kennedy, upon cross-examination produced a contract or agreement made by him with the Gold Seal Baking Company on the 9th day of September, 1925, in relation to the sale and distribution of cakes, etc. By this contract Dorman was given the exclusive right to sell and distribute cakes of the Gold Seal Baking Company in the territory therein named for the period of ten years. He was not permitted to sell and distribute cakes for others, and was to expend his whole time in the distribution of the Gold Seal Baking Company's cakes. The cakes were to be furnished to him at twenty cents per pound and he was to sell them to the retailer at twenty-five cents per pound, settlement to be made daily by Dorman for all cash received by him on that day. Dorman guaranteed to do a weekly business of three hundred dollars the first month and five hundred dollars per week during the remainder of the period of ten years. He was to have at least three trucks calling on the trade, etc. The Gold Seal Baking Company agreed to furnish garage space for the trucks and to letter them without charge. Dorman was to receive, in cash or stock, a bonus of eight per cent. on one-half average weekly purchases from the Gold Seal Baking Company, and in the event of a breach of the agreement by Dorman, the agreement was to be at an end. Dorman from the first failed to carry out the provisions of the contract; he did far less business than he had guaranteed to do and, as we gather from

the record, he was not required to account for the price of
the cakes received by him, but was paid commissions on that
which he sold, and given credit for the unsold and stale
cakes.   Moreover, the settlements required of him were alto-
gether different from those mentioned in said agreement.
The two trucks owned by the company at the date of the
agreement were sold to Dorman, and a mortgage taken on
them by the company for the purchase money, of which no
part was ever paid.   Dorman was unable to buy the third
truck, the one driven by Kennedy, and it was bought by the
company, the title transferred to it, and the license therefor
issued to the company, and the truck was so held at the date
of the accident.

The office occupied by Dorman was in the plant of the
Gold Seal Baking Company, and it was there, he claims,
that Kennedy was paid by him for his services.   Tiralle, the
secretary, and Scherr, the president, of the baking company,
as well as Dorman, all testified that Kennedy was not em-
ployed by the baking company, but by Dorman, who, as they
claimed, was an independent contractor.

The court granted issues of fact, in addition to the ques-
tion whether John J. Kennedy at the time of the accident
was an employee of the Gold Seal Baking Company, desig-
nated as issue "C," but as these are not involved in this
appeal, they need not be considered.

At the conclusion of the evidence the court was asked by
the defendants to instruct the jury that there was no evi-
dence legally sufficient to entitle the plaintiff to recover
against the Gold Seal Baking Company, and that "their
verdict should be for that company."   This prayer was re-
fused.

The claimant, Margaret C. Kennedy, offered six prayers,
all of which were granted.   The exceptions relate only to
the court's action in refusing appellant's prayer to withdraw
the case from the jury, and to its rulings in granting the
fourth and fifth prayers of the claimant Margaret C. Ken-
nedy, and overruling the defendant's special exceptions there-

to.    Therefore we will not refer to and discuss the other prayers of the appellee.

The jury were told by the fourth prayer of Margaret C. Kennedy *"that even though they shall find from the evidence that the Gold Seal Baking Company and John W. Dorman entered into the written agreement of September 9th, 1925, offered in evidence, nevertheless, if they shall further find that prior to the accident resulting in the death of John J. Kennedy, the Gold Seal Baking Company and the said John W. Dorman had abandoned said written agreement, and if they shall further find that at the time of the death of John J. Kennedy,* the said John W. Dorman was engaged in the service of the Gold Seal Baking Company selling and distributing its products, and if they further find that acting within the scope of his service, he employed said Kennedy as a driver for said baking company, then the answer of the jury to Issue C shall be 'Yes.' "

By her fifth prayer the jury were told that if they found the facts stated in her fourth prayer which are italicized therein, then "the said John J. Kennedy was engaged in the sale and distribution of the products of the Gold Seal Baking Company as an employee of said baking company; if the jury so find, then the answer of the jury to Issue C shall be 'Yes.' "

Special exceptions were filed to both the fourth and fifth prayers, on the ground that there was no evidence legally sufficient to show abandonment of the agreement between the plaintiff and defendant, which we have said were overruled.

We will first consider the ruling of the court in refusing to grant the defendant's prayer to withdraw the case from the jury on the ground that there was no legally sufficient evidence in the case, tending to show that Kennedy was an employee of the Gold Seal Baking Company.    It is upon this ruling of the court that the appellants chiefly rely for a reversal of the judgment.

The evidence of Mrs. Kennedy tending to show that her husband was in the employment of the Gold Seal Baking

Company, which was admitted without objection, was, we think, when considered in connection with other facts found in the record, from which such employment might be inferred, sufficient to carry the case to the jury. Mrs. Kennedy was told by her husband that he was employed by the Gold Seal Baking Company, and gave in detail the conversation with him, in which he told her of his meeting Dorman upon the street and being asked by him to go the next day to the bakery of the Gold Seal Baking Company; and of his going there and talking with the secretary and president of that company, when they suggested that he should work for them in Washington, which he refused to do, assigning his reasons therefor. He was then told to come back the next day and they would again "talk things over." That he went back the next day, again saw them, and on the following day went to work, as he thought, for them, distributing cakes for that company in a truck belonging to them, having painted upon it the words heretofore given. There was no contradiction by Tiralle, Scherr, or Dorman, of the statement that Kennedy talked with the officials of that company, or of what they said to Kennedy as told by him to his wife. If he were employed by Dorman, it is difficult to understand why Dorman should have thought it necessary to have him see the secretary and president of the appellant company before employing him.

As to the special exceptions to Mrs. Kennedy's fourth and fifth prayers, there was, in our opinion, sufficient evidence to go to the jury, tending to show abandonment of the original agreement between the company and Dorman, which was not shown to have been known to the deceased, to the extent at least of changing the relations existing between the parties, involving the question whether Dorman continued to be the purchaser of the company's goods, or was thereafter employed by the company as a distributor of them. As to the prayers, we discover no error of the court in its rulings thereon. The judgment of the court will therefore be affirmed.

*Judgment affirmed, with costs.*