OLD *v.* COONEY DETECTIVE AGENCY ET AL.

[No. 126, September Term, 1957.]

518

520

*Decided February 27, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Walter R. Tabler* for the appellant.

*J. Howard Holzer, Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, U. Theodore Hayes* and *Ernest N. Cory, Jr., Special Assistant Attorneys General,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The State Industrial Accident Commission disallowed a widow's claim for compensation benefits for the death of her husband. At the conclusion of the testimony on appeal to the Superior Court of Baltimore, the trial judge directed a verdict for the employer. In her appeal, the widow argues that it was error for the lower court, after permitting the case to be tried on one issue, (a) to withdraw it and substitute another issue in its place, and (b) to instruct the jury to answer the new issue adversely to the widow.

Rule 633 of the Rules of the Supreme Bench of Baltimore City provides that appellant and appellee, within specified times after the record has been filed, shall submit proposed issues and exceptions to the issues of the other, and that any exceptions filed shall stand for hearing on the next law day. The rule then provides that "The case shall be set for trial promptly after disposition of all exceptions" and that if no issues are filed within the time allowed, the court may itself frame issues or pass any other order which it deems appropriate. The widow filed a proposed issue in due time, and the employer excepted and submitted a proposed issue. Judge Allen granted the widow's issue, to wit: "Was the death of Harry Old in any way contributed to or hastened by his accidental injury of February 20, 1953, or the results of said accidental injury?" When the case came on for trial, counsel for the employer told the court that Judge Allen had over-ruled its issue—*viz.*, "Was the death of Harry E. Old the result of an accidental injury which arose out of and in the course of his employment * * *?" and substituted the widow's issue. At that point counsel for the claimant said that Judge Allen had not ruled on the employer's issue "to the point of excluding it, but that his ruling had merely held the issue proposed on behalf of the claimant was a proper one." The trial court stated that he felt obligated to honor Judge Allen's ruling but that after all the testimony was in, if he disagreed with the ruling, he would "have a right either to accept the issue as framed by the claimant or as submitted by the employer and the insurer, or frame my own * * *." No ob-

jections or exceptions were taken to the statement or to the proposed course of action of the trial court.

We think the appellant correct in her contention that issues should be framed before the case goes to trial and that each side must have an opportunity to prepare his case in the light of the issues that have been approved by the court. Here, however, the appellant went to trial knowing that the employer's issue might be submitted to the jury at the conclusion of the testimony, and made no objection. We find it unnecessary to rule on the point, because we think that the trial court erred in directing a verdict on the employer's issue and that the case should have gone to the jury on that issue with appropriate instructions as to the matters which the jury should take into account in reaching a decision.

The record shows that Harry Old was an employee of the Cooney Detective Agency. On February 20, 1953, while working as a special guard, he fell six feet from a box onto a stone floor and sustained rather severe injuries to his face, suffering a fracture of the right zygomatic arch and malar bone extending into the right antrum, with bleeding in the antrum. As a result of the fractures, it was necessary to remove some of his teeth. The testimony leaves no doubt that his physical condition declined steadily and markedly from the date of his accident. The record also establishes that he was suffering from chronic arteriosclerotic hypertension at the time of the accident, and that four months later he suffered a stroke, resulting in paralysis of the left side. It was necessary for him to be in the hospital for some time.

On September 28, 1954, the Commission awarded him permanent total disability benefits that reflected its determination that 70% of his disability was due to the accidental injury and 30% to a pre-existing disease or infirmity. His physical decline continued steadily and on October 8, 1955, he died of cancer of the bladder with generalized metastasis. The controversy which we are asked to decide is, as it was before the Commission and the trial court, whether there was a causal connection between the accidental injury of 1953 and its sequelae, and the death, which admittedly was caused by cancer.

The parties differ as to whether Old had cancer prior to the accident in 1953. The trial court seemingly acted on the assumption that there was no evidence that cancer existed at the time of the accident, and the appellees argue earnestly that this was correct. The evidence that Old had cancer prior to 1953 was contained in hospital records of St. Joseph's Hospital. Mrs. Old produced Dr. Oscar B. Camp, a surgeon certified by the American Board of Surgery, who testified that in his professional opinion Old's physical, nutritional and metabolic condition deteriorated steadily as a result of the accident, and that this deterioration and the fact that his defense mechanisms had become weakened and debilitated caused him to die from the ravages of cancer sooner than he would have died except for the accident. He could not say that the accident was the immediate cause of death or of the cancer, nor of his own knowledge whether the cancer began before or after the accident. His testimony may be summarized in a colloquy of counsel—the widow's lawyer said that what he had asked was: "did the injury and its sequelae and the things that came about as a result of his injury hasten his death in the doctor's opinion", to which the lawyer for the employer replied: "The answer is yes."

The appellees concede that the law is that "an aggravation or acceleration of a pre-existing disease or infirmity is ordinarily compensable under the Maryland Act" but they go on to say: "The claimant, however, failed to meet the test of producing legally sufficient evidence of a pre-existing disease or infirmity."

The evidence as to the existence of cancer at the time of the accident is thin. In the St. Joseph's Hospital record of February 18, 1955, is a statement by Dr. J. H. Mennings that Old had shown symptoms of cancer of the bladder over the period of the previous six months. The record of the same hospital for the visit of October 1955 recites that Old entered the hospital complaining of "localized hypergasia of about 3 years' duration, with disturbances of micturition", and also that he had "complained of severe pain localized over the bladder area for about three and a half years." The doctor for the insured admitted that this pain "possibly could

be due to cancer." The October 1955 history, prepared by a physician also said that "Carcinoma of the bladder was diagnosed about three and one half years ago." The source of this statement is not indicated, but evidently the doctor writing the history found it credible and significant.

Hospital records are admissible under Code, 1951, Art. 35, Sec. 68. This is not to say that everything in the record is admissible. In *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 447, 451, before the passage of the statute, this Court held a hospital record to be admissible despite the hearsay rule, because it is made by one whose duty it is to correctly make the entries and long experience had shown that the physician is fully warranted in depending upon the reliability and trustworthiness of such a record. It added that: "It is difficult to conceive why this record should not be reliable. There is no motive for the person, whose duty it is to make the entries, to do other than record them correctly and accurately" and, as reassurance, pointed out that not necessarily would all of the record be proper evidence, saying: "* * * if its contents upon examination would be open to other objections, such as immateriality, irrelevancy, or that it was an expression of opinion by persons not competent to express an opinion, those objections are not precluded by what we have here said." In *Scott v. James Gibbons Co.,* 192 Md. 319, 330, the Court said of hospital records admitted over objection: "Of course such records are admissible, and statements therein showing the history of the patient's physical condition are proper. History in this connection means the physical background as well as the present condition of the patient. It is proper for the record to show the patient was hurt in an automobile accident, but the particulars of such accident, contained in a hospital record, should be deleted and not submitted to a jury in a case like this. This is hearsay."

Some Courts have limited the admissibility of statements in hospital histories to a greater extent than has this Court, saying they were hearsay on hearsay, or that the maker of the record was incompetent. This Court has gone far in admitting the particulars set forth in the history of a patient

in a hospital record. In *Bethlehem Shipyard v. Scherpenisse,* 187 Md. 375, 381, we said: "* * * this Court holds that a hospital record containing the history of a patient's case is admissible in evidence, whether or not the statements therein were made by the patient himself." In the *Scherpenisse* case the part of the hospital record objected to was: "Patient cut left foot and developed an infection involving entire leg." It was not shown by whom this history was given or whether the informant was competent to evaluate the opinion. In *Wickman v. Bohle,* 173 Md. 694 (unreported), 196 A. 326, it was held that a statement in the hospital history that the patient sustained "a fractured right clavicle two weeks prior to his admission" was admissible over objection although the source of the information was not shown. We have said that reliability sufficient to justify admission is suggested if the recital in the history is "pathologically germane" to the physical condition which caused the patient to be brought to the hospital for treatment. *Lee v. Housing Authority of Baltimore,* 203 Md. 453; *Shirks Motor Express v. Oxenham,* 204 Md. 626, 635. And, in *Morrow v. State,* 190 Md. 559, 562, Judge Henderson, for the Court, found a duplicate sales slip admissible since it met the test of "necessity and circumstantial guaranty of trustworthiness."

We need not decide whether the hospital records would have been admissible over objection, for they came in without objection, and if the case is retried, there may be offered direct evidence that alone, or with the corroboration of the records, would show the pre-existence of the cancer. At the trial we are reviewing, counsel for the claimant named the various records he proposed to offer. In response to the court's inquiry, counsel for the insurer said he had no objection to them and the records were admitted. When the specific statement as to the diagnosis of cancer at a time before the accident was read to the jury, there was no objection. If, for the argument, it be assumed that the evidence in the records was inadmissible hearsay—for example, that Old had told the compiler of the history what his doctor had told him—yet, since it came in without objection it had, for all purposes, the same intrinsic probative value and weight it

would have had if competent evidence. In *Winsor v. Hawkins* (Conn.), 37 A. 2d 222, the plaintiff testified without objection that she had been caused to have neuritis and water on the knee, and the Court, noting that she probably had it secondhand from her doctor, said that her testimony could be given weight. The general rule on the subject is well stated in *McCormick, Evidence,* Sec. 54 at 126: "If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of whatever rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. Such incompetent evidence, unobjected to, may be relied on in argument, and alone or in part may support a verdict or finding. This principle is almost universally accepted, and it applies to any ground of incompetency under the exclusionary rules."

This Court has agreed with McCormick and, in compensation cases where hearsay came in because not objected to or because it was admitted over objection, has held such evidence, alone or in part, enough to sustain a jury finding on vital issues. In *Standard Oil Co. v. Mealey,* 147 Md. 249, 251, 255, the workman died of lympho-sarcoma claimed to have been superinduced by a fall against the delivery wagon he drove. There was no bruising or external mark and no original report of injury. The disease was incurable and swift in bringing about the inevitable end. The man's doctor thought a blow or injury would have no direct effect on the lympho-sarcoma, but that in all probability there had been trouble with the · spleen (where the growth was) and that "a little injury might have hastened it a great deal * * *." The only evidence of accidental injury was the hearsay testimony of the wife and the doctors that the worker had told them of the fall. Chief Judge Bond, speaking for the Court, concluded: "* * * there was no reversible error either in the admission of the evidence or in the refusal of the prayer directing a verdict for the defendant * * *." The decision was approved and relied on in reaching a similar result in *Spence v. Steel Co.,* 173 Md. 539, 548-550, where the latitude this Court has allowed in compensation cases

where death has ensued, was commented on. *Gold Seal Baking Co. v. Kennedy,* 152 Md. 648, 652; *Construction Co. v. Griffith,* 154 Md. 55, 60; and *Ross v. Smith,* 169 Md. 86, 89, were cases where hearsay evidence, statements of the deceased worker, were admitted without objection, and held to have the same probative force in taking the case to the jury, and otherwise, as any other evidence of the essential fact they tended to prove. Judge Sloan, in *Spence v. Steel Co., supra,* said that in *Construction Co. v. Griffith,* just cited, "the only evidence of injury was from statements made by the employee, which were not objected to, and therefore had all the force of direct evidence."

In a compensation case, as in other cases, the trial judge, in determining whether there is an issue for the jury, must accept as true the testimony produced on behalf of a claimant, including unobjected-to hearsay testimony and all legitimate inferences from it, and must resolve all conflicts in the evidence in his favor. *Bethlehem Shipyard v. Scherpenisse, supra; Reeves Motor Co. v. Reeves,* 204 Md. 576; *Havre de Grace Fireworks Co. v. Howe,* 206 Md. 158, 164. If the trial court had used this standard, there was evidence to go to the jury from which they could have found that Old was suffering from cancer when the accident happened in February of 1953, that the accident brought about the stroke, and that the stroke and the other effects of the accident so weakened and tore down his strength and stamina that he died from cancer sooner than he otherwise would have. We must determine whether this evidence, if believed, would be sufficient under the law to require the payment of death benefits—that is, did the death of Old result from the accident?

Substantial authority in other States supports the position of the appellant. 1 *Larson, Workmen's Compensation Law,* Sec. 12.20, *Internal Weakness Aggravated by Employment,* 1957 Supp. at 26, says this: "The reasoning began with the maxim that 'To hasten death is to cause it'. Avignone Freres, Inc. v. Cardillo, * * * 117 F. 2d 385, 386. This axiom, for compensation law purposes, makes good sense, for the homely reason that we must all die some day, and therefore the most

any injury can do, in a sense, is to accelerate inevitable death. If the maxim is accepted, the issue becomes very narrow: Did the injury, for which the total permanent disability award was made, also hasten the death?" A pertinent case which agrees with the statement of the text is *Murphy's Case* (Mass.), 103 N. E. 2d 267, 268, 269. Murphy suffered a coronary thrombosis on March 7, 1947, as a result of lifting a heavy package while at work. He died on October 6, 1948, of cancer of the bladder and uremia. A physician and surgeon testified that the decedent's "semi-invalid condition (due to the coronary thrombosis) lowered his resistance so that death occurred (due to cancer) before it otherwise would have", and that decedent's "weakened condition, which was due to thrombosis * * * shortened his days." The Supreme Judicial Court of Massachusetts said: "It is not for us to determine whether the opinion of the doctor was medically sound. We think that it was not so contrary to common sense or so clearly based upon conjecture that it could have been disregarded. * * * Its probative value was for the fact finding tribunal to decide. * * * It was sufficient to warrant the conclusion that the personal injury of the employee contributed to his death." The Massachusetts Court said in the case of *In re Luczek's Case* (Mass.), 141 N. E. 2d 526, that compensation was payable for a death caused by cancer which was hastened by a hernia operation that did not affect the cancer directly but did deplete body reserves. See also *Lumbermens Mut. Cas. Co. v. Reed* (Ga. App.), 66 S. E. 2d 360; *Taylor v. Mansfield Hardwood Lumber Co.* (La. App. 2nd Cir.), 65 So. 2d 360; *Boyd v. Young* (Tenn.), 246 S. W. 2d 10; *Malik v. City of Uniontown* (Pa. Super.), 94 A. 2d 151; *Lachance's Case* (Me.), 118 A. 370; *Travelers Ins. Co. v. Rowand* (5th Cir., 1952), 197 F. 2d 283.

Maryland, as the appellees concede, has held repeatedly that an accidental injury which accelerates or aggravates an existing disease or infirmity is a compensable accident. *Cabell Concrete Block Co. v. Yarborough*, 192 Md. 360, 365; *Geipe, Inc. v. Collett*, 172 Md. 165, 169; *Fertilizer Works v. Thomas*, 153 Md. 631; *Bethlehem Shipyard v. Scherpenisse, supra*. In *Thompson v. Phosphate Works*, 178 Md. 305,

323, 324, the claimant had serious pre-existing bronchial and heart trouble that had caused him to be hospitalized twice. The Court approved the granting of a prayer that permitted recovery even though the jury found that death was due to myocardial failure, embolism and bronchopneumonia, provided: "* * * that said death as a result of said disease was accelerated as a result of said injury * * *."

The Massachusetts Court, in *Murphy's Case,* cited above, said that the doctor's opinion must be submitted to the jury because "* * * it was not so contrary to common sense or so clearly based upon conjecture that it could have been disregarded." This Court has phrased the same test in these words in *Reeves Motor Co. v. Reeves,* 204 Md. 576, 581-582: "Possibility that the injury caused the result must amount to more than a guess and the relation of the accident to the condition complained of in point of time and circumstance must not be merely fanciful. * * * The law requires proof of probable, not merely possible facts, including causal relationship. * * * If the accidental injury has accelerated or aggravated an existing disease or infirmity, the claimant is entitled to disability."

There was competent medical testimony that the accident had results that enabled the cancer to produce its inevitable effect sooner than it otherwise would have, and, so, the accident could be found to have contributed to the death. *Standard Oil Co. v. Mealey,* cited above. Compare *Radiator Co. v. Masenheimer,* 163 Md. 651, where there was no testimony of a causal connection between the accident and the increased disability that existed at a time when a second reopening of the case was sought.

The case should have been submitted to the jury on the issue of whether death resulted from the accidental injury, with appropriate instructions as to what the jury must find as to acceleration and causal connection.

*Judgment reversed; case remanded,*
*costs to be paid by the appellees.*