GREENE *v.* YEAGER ET AL.

[No. 206, September Term, 1959.]

412

*Decided May 16, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Albert H. Greene,* for appellant.

*John J. Pyne,* with whom was *G. A. Chadwick, Jr.,* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

After the Circuit Court for Montgomery County found that the appellant-claimant had received no permanent partial disability as the result of her falling while she was engaged in her employer's business, she appealed.

The claimant, Minna Greene, was employed by Yeager's Dress Shop. On April 23, 1953, [the case was placed and

remained upon the stet docket for some two years] while waiting on a customer, she stumbled backward when she reached behind her for some dresses and fell, and as a result thereof suffered a Colle's fracture of her left wrist. Thereafter, the State Industrial Accident Commission [Commission]—now the Workmen's Compensation Commission—passed an order that compensation at the rate of $31.75 per week be paid to her by H. T. Yeager, employer, and Hardware Mutual Insurance Company, insurer. She was classified as temporarily totally incapacitated as a result of said fall, and was paid compensation therefor until September 21, 1953.

A hearing was held by the Commission on the question of permanent disability on May 25, 1954, at the request of the claimant. The Commission found that she had sustained "a permanent partial disability resulting in 15% loss of use of left hand," as well as the temporary total disability for which she has been paid.

The case was submitted to the Circuit Court upon the record made before the Commission by stipulation of the parties. The record is comparatively short and consists of the testimony of the claimant, in her own behalf, and Dr. Everett J. Gordon, a specialist in orthopedic surgery, called by the employer and insurer. The trial court found that the claimant did not suffer any permanent disability as the result of her fall; consequently, that part of the order of the Commission which awarded her compensation therefor was reversed. The sole question for our determination is the correctness, *vel non,* of the trial court's finding.

The appellant's whole attack upon this ruling is that the court "erred when it found *as a matter of law* that the evidence was insufficient to support the finding by the Commission of permanent partial disability." (Italics added.) It is true that the court did find that there was *no* evidence to support the finding of the Commission, but this was only a part of the court's findings of fact; and, in the then posture of the case, was totally unnecessary for its determination.

The case had been submitted to the court. Either side, of course, could have requested, before its submission, a jury

trial to determine the questions of fact. Code (1959 Cum. Supp.), Article 101, Section 56 (a). This section also states:

> "* * * If the court shall determine that the Commission has acted within its powers and has correctly construed the law and *facts,* the decision of the Commission shall be confirmed; otherwise it it shall be reversed or *modified."*   (Italics added.)

Neither side made a request for a jury trial; hence, the trial court was called upon to determine whether or not the Commission had, "correctly construed the * * * facts" (special provision, however, is made for cases in which occupational diseases are involved by said section), giving due weight to the provision in sub-section (c) that the decision of the Commission is prima facie correct. *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 416, 417, 177 A. 910. Cf. *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 158 A. 2d 621.

That Judge Anderson did carefully consider and construe the facts is shown by the following quotation from his opinion:

> "A careful review of the testimony discloses that the claimant returned to work on September 21, 1953, although she had previously worked a half day in July and has been working since that date. Under questioning by the Commission, the claimant stated that she still has some pain in the wrist and fingers of her left hand, but not as much as on September 21, 1953, when she returned to regular employment.
>
> "Dr. Everett J. Gordon, an orthopedic surgeon who treated the claimant following the injury and who was her orthopedic surgeon, testified that he discharged the claimant on June 16, 1953, and at that time an x-ray revealed the fracture to be well healed with no arthritic changes. He further testified that he examined her on October 1, 1953, at which time x-rays taken September 23, 1953, showed the fracture to be well healed, in perfect position with joint space intact and no deformity and no arthritic changes. She had no crepitation and full

functioning in the arm throughout the wrist, a good grip and was able to move the fingers well. The comparative measurements in the range of motion between the left and right wrists were approximately the same. He examined her again on April 21, 1954, at which time the examination revealed full function and the findings were similar to the previous examination except for the fact that there were some arthritic changes in her fingers of both hands. He did not attribute the arthritic changes to the fracture but rather to a natural progression of a pre-existing disease rather than trauma. In answer to a question by the Commission as to how he could explain the pain she now complains of, he stated that it was due to her general nervous disposition rather than being due to the injury.

"The Court further finds that the claimant *did not* sustain a permanent partial disability which resulted in loss of use of her left hand as found by the Commission. In arriving at this conclusion, the Court found, (sic), that the claimant had fully recovered from her injury on September 20, 1953, at which time she resumed her regular employment, and that this finding was supported by all of the medical testimony. There was no evidence to show that any arthritic changes in her left hand and wrist had been brought about or [permanently] aggravated by the injury."

After reviewing and considering the entire transcript of testimony, we cannot say the learned trial judge was in error.

*Judgment affirmed, with costs.*