YELLOW CAB COMPANY ET AL. *v.* HICKS, ETC.

(Two Appeals In One Record)

[No. 176, September Term, 1960.]

564

*Decided March 22, 1961.*

*Motion for rehearing filed April 21, 1961, denied May 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, MARBURY and SYBERT, JJ.

*Frederick J. Green, Jr.,* with whom were *R. Roger Drechs-
ler* and *Lord, Whip, Coughlan & Green* on the brief, for ap-
pellants Yellow Cab Company and Charles Wilson.

*William B. Somerville,* with whom were *Paul E. Burke,
Jr.,* and *Smith, Somerville & Case* on the brief, for appel-
lants Sinclair Operating Company, Inc., and John C. Carr.

*Amos I. Meyers,* with whom were *Kieffner, Stinchcomb
& Royster* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

Yellow Cab Company and its driver, Charles Wilson, and
Sinclair Operating Company, Inc., and its driver, John C.
Carr, appeal from a judgment for personal injuries entered
upon a jury's verdict against all of them in favor of Hushell
Hicks, to his own use and to the use of New Amsterdam
Casualty Company, the subrogated workmen's compensation
insurer.

Hicks, just after noon on November 4, 1957, was driving
a dump truck west on North Avenue in Baltimore City, us-
ing the lane next to the parking lane. While he was stopped
waiting for a red light to change at North Avenue and Small-
wood Street, Yellow Cab's taxi, heading south on Smallwood
Street, made a right turn into North Avenue and proceeded
west. Almost immediately the light turned green for Hicks
and he continued west on North Avenue when, according to
his testimony, the taxi made a sudden stop and, without warn-

ing, the driver of the taxi swung open his left front door. Unable to change his course quickly enough, Hicks was forced to bring his truck to a sudden stop to avoid striking the open door of the taxi. While Hicks was "fixing to tell" the taxi driver, Wilson, to close his door, his truck was struck from the rear by a tractor-trailer of the other appellant, Sinclair Operating Company, Inc. Carr, the driver of the tractor-trailer, stated that in an effort to check on some children stepping off the curb at the northeast corner of the intersection of North Avenue and Smallwood Street, he had looked to his right and, as a result, did not see appellee's stopped truck in time to avoid a collision. He further testified that, approaching the intersection, he had slowed down to approximately twenty miles an hour and that at the intersection he gauged his distance behind Hicks' truck to be ten or fifteen feet. When he did finally notice the truck before striking it, he was "right into it, maybe ten feet".

As a result of the collision Hicks suffered certain injuries, particularly to his lumbar spine, which have persisted. His actions subsequent to the collision are the subject of conflicting testimony, and relevant facts will be adverted to hereafter.

Considering first the contentions of Yellow Cab Company and its driver, Wilson, we are asked to reverse the judgment of the trial court on the basis of its refusal to grant motions for a directed verdict submitted by those appellants at the close of plaintiff's case and again at the conclusion of the whole case. These motions were based on the theory that the negligence of the driver of the taxi was not the proximate cause of the accident, and that as a matter of law the negligence of the operator of the tractor-trailer was the sole proximate cause of the accident. We find no merit in this contention.

It is clearly established that negligence which constitutes a proximate cause of an injury need not necessarily be the sole cause (see 3 MLE, *Automobiles,* § 162, and cases there cited). It is enough to show that defendant's negligence is an efficient and contributory cause of the injury, without

which the injury would not have resulted, despite the additional negligence of another motorist. *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 Atl. 111 (1938); *Dorschel v. Tzomides,* 214 Md. 341, 135 A. 2d 417 (1957); *Brawner v. Hooper,* 151 Md. 579, 135 Atl. 420 (1926).

It is argued strenuously by Yellow Cab that the taxi driver's act ceased to operate as an active cause of the accident (since Hicks had stopped his truck without striking any part of the taxicab), and that Carr's negligence intervened as the sole proximate cause. However, it is apparent that the taxi driver's negligence could be considered as having created a condition which set the stage for the wrongful conduct of the tractor-trailer, thus establishing concurrent liability chargeable to both negligent parties. *Armiger v. Baltimore Transit Co., supra; Lange v. Affleck,* 160 Md. 695, 155 Atl. 150 (1931); Restatement, *Torts,* § 441.

We therefore do not feel that the evidence warranted a finding as a matter of law that the negligence of Carr was the sole proximate cause of the accident, relieving Yellow Cab of liability. In our view the trial court properly submitted to the jury the question whether or not the negligent act of the taxi driver in stopping three feet from the curb and then opening his door in the path of oncoming traffic, according to appellee's version of the testimony, actively continued to operate as a proximate cause, setting up the chain of events leading to the accident. *Dorschel v. Tzomides, supra; Armiger v. Baltimore Transit Co., supra; Lashley v. Dawson,* 162 Md. 549, 160 Atl. 738 (1932); Restatement, *Torts,* § 439.

The facts in *Bloom v. Good Humor Ice Cream Co.,* 179 Md. 384, 18 A. 2d 592 (1941), and *Maggitti v. Cloverland Farms Dairy,* 201 Md. 528, 95 A. 2d 81 (1953), cited by Yellow Cab, are distinguishable from the circumstances of this case. Both of these cases involved vehicles which were illegally double-parked, with no other negligent act committed by their operators. The Court found that in neither case was the intervening act of another motorist resulting in injury connected with the passive act of parking the vehicle, nor were the subsequent acts of the parties involved susceptible of being anticipated by the operators of the parked vehicles.

Here, in addition to the fact that the taxi was stopped away from the curb beyond the legal distance (Code [1957], Art. 66½, § 246), another act of negligence is relied upon, namely, the opening of the door by its driver into the line of traffic. Where, as here, the facts are disputed and admit of more than one inference, the questions of negligence and proximate cause are for the jury. *Jubb v. Ford,* 221 Md. 507, 157 A. 2d 422 (1960).

Yellow Cab further contends that the trial court committed certain prejudicial errors which should entitle it to a new trial. The first was the instruction by the trial court that the jury could consider whether or not the driver of the tractor-trailer was confronted with an emergency requiring him to check the safety of the children stepping off the curb on his right. The instruction given in this regard was complete and, considered in the context of the whole charge to the jury, does not in our opinion reveal any prejudicial error with respect to Yellow Cab. *State, Use of Taylor v. Barlly,* 216 Md. 94, 140 A. 2d 173 (1958); *West v. Belle Isle Cab Co., Inc.,* 203 Md. 244, 100 A. 2d 17 (1953). There would seem to be more justification for complaint by appellant Sinclair, in fact, had the instruction in question not been given, since the jury might have found that the driver of Sinclair's tractor-trailer had taken his eyes off the road for a legitimate purpose. In any event even though this instruction were erroneous (which we do not find), Yellow Cab was not prejudiced since the jury manifestly found no emergency situation which absolved Carr of negligent causation.

The second prejudicial error cited by Yellow Cab is that the lower court improperly excluded from evidence a portion of the records of the medical department of the New Amsterdam Casualty Company. In dispute was part of a sentence in a record of a statement made by Hicks at the company's clinic sometime after the accident, with respect to what he had done on the morning after the accident, as follows:

> "* * * Got in cab & went to Amos Meyers who sent him to a doctor—has reported to Dr. every day, but plaintiff does not know his name * * *"

Yellow Cab sought to have the whole record, including this statement, admitted under the provisions of Code (1957), Art. 35, § 59, allowing into evidence records made in the usual course of business. The contemplated use of this statement was to impeach certain testimony of Hicks. The trial court, however, excluded the first part of the statement referring to Hicks' alleged trip to his lawyer and the referral by the lawyer to a doctor.

This Court has readily permitted the introduction of proper hospital records under the statute. *Old v. Cooney Detective Agency,* 215 Md. 517, 138 A. 2d 889 (1958); *Bethlehem-Sparrows Point Shipyard v. Scherpenisse,* 187 Md. 375, 50 A. 2d 256 (1946). However, it does not follow that the record as a whole is always admissible. This Court has adhered to the rule that statements in a hospital record must be "pathologically germane" to the physical condition which caused the patient to go to the hospital in the first place. *Lee v. Housing Authority of Baltimore,* 203 Md. 453, 101 A. 2d 832 (1954); *Shirks Motor Express v. Oxenham,* 204 Md. 626, 106 A. 2d 46 (1954). A "pathologically germane" statement "must fall within the broad range of facts which under hospital practice are considered relevant to the diagnosis or treatment of the patient's condition". McCormick, *Evidence,* Ch. 32, § 290.

We feel that the statement deleted by the lower court was properly excluded. It was not in any sense "pathologically germane", since it was not relevant to the diagnosis or treatment of the appellee. The later objective findings of physical disability by reputable physicians refute the argument that such statement is "pathologically germane" to show that Hicks' complaints were of psychosomatic origin.

The third and final prejudicial error alleged by Yellow Cab, which also constitutes the only basis of the appeal by appellant Sinclair, is that the trial court permitted Dr. Nathaniel Sharp, a specialist in orthopedic surgery called by Hicks, to testify to the history and subjective complaints of Hicks and to express an opinion as to his disability based upon the history and subjective complaints. Hicks was first seen by

Dr. Sharp on December 17, 1957, apparently at the request of appellee's attorney. The surgeon examined the appellee again on March 5 and June 3, 1958, and a final time during the course of the trial in February, 1960. Dr. Sharp testified extensively as to Hicks' case history and complaints and as to his own findings at each examination and also as to his opinion of the extent of appellee's disability. He also testified, in answer to questions by the court as to his primary duty, that he was expected to make recommendations to physicians as to treatment and also report these recommendations to attorneys. He in fact did send his findings and recommendations to Dr. Sborofsky when the latter assumed the treatment of appellee.

The contention of appellants is that Dr. Sharp had been contacted by appellee's lawyer not to treat appellee but for the sole purpose of subsequently testifying in court. They maintain, and correctly so, that when such situation exists testimony by a physician does not come within the exception to the hearsay rule extended to "treating" doctors. *Parker v. State*, 189 Md. 244, 55 A. 2d 784 (1947); *Wolfinger v. Frey*, 223 Md. 184, 162 A. 2d 745 (1960); *Francies v. DeBaugh*, 194 Md. 448, 71 A. 2d 455 (1950).

The trial court admitted the testimony, however, on the basis of Dr. Sharp's capacity of a consulting physician. We find no error in this ruling.

Dr. Sharp testified exhaustively as to objective tests performed by him during each examination which revealed the existence of physical injuries and disability in the patient. The surgeon's objective evidence supported the statements made to him by Hicks as well as Hicks' testimony on the stand. The existence of the patient's injuries was borne out by the weeks of treatment which he received at the clinic of the Workmen's Compensation insurer, as well as the months of treatment thereafter by Dr. Sborofsky.

Furthermore, Dr. Sharp's efforts were directed not only to diagnosis but also to treatment since his recommendations would form some basis for the course of treatment by the patient's regular physician. The record shows that the surgeon suggested certain specific methods of treatment to Dr. Sborof-

sky. Dr. Sharp's function here was as a consultant involved in determination of appellee's treatment.

Moreover, even if it were assumed that Dr. Sharp's early testimony at the trial was inadmissible under the rule stated in *Parker v. State, supra,* as based in part on the history and subjective complaints related to him (as an examining physician only) by Hicks at the first three examinations (which we do not find), any presumed error resulting from its admission was cured by subsequent events at the trial. On the first day of the trial the trial court admitted testimony by Dr. Sharp as to his finding of Hicks' permanent partial disability, over objection by appellants' counsel because of the remoteness in time of the surgeon's three examinations, the last of which had occurred a year and a half prior to the trial. When Dr. Sharp left the witness stand appellee's counsel announced his intention of having the surgeon examine Hicks that evening and testify as to his findings when trial resumed next day. On the next morning Judge Oppenheimer, the trial judge, made it clear that Dr. Sharp's testimony must be based solely on the physical examination of appellee on the previous evening. Thereupon, over objection by appellants' counsel, Dr. Sharp testified at length as to the examination and described in detail various tests and X-rays made. His objective findings of then existing injury and disability were in accord with his prior findings based on the first three examinations, as to which he had testified on the previous day. Since the testimony as to the examination on the preceding evening, and the results thereof, were based entirely upon the surgeon's own observation, and not upon statements made to him by the patient, the hearsay rule was not applicable and such testimony was clearly admissible as direct evidence. Therefore any presumed prejudice occasioned by the surgeon's earlier testimony was cancelled by his later competent testimony to the same effect.

Since we find no prejudicial error in the rulings and instructions of the trial court, we affirm the judgment entered there for appellee.

*Judgment affirmed, appellants to pay the costs.*