CANDELLA *v.* SUBSEQUENT INJURY FUND ET AL.

[No. 129, September Term, 1975.]

*Decided March 2, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Submitted on brief by *James E. Crawford* and *Peter G. Angelos* for appellant.

*J. Kent Leonnig, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *H. George Meredith, Jr., Special Assistant Attorney General,* on the brief, for Subsequent Injury Fund, part of appellees. *Ronald A. Baradel,* with whom were *S. Kennon Scott* and *Hartman & Crain* on the brief, for Friendship International Hotel and Aetna Casualty & Surety Company, other appellees.

LEVINE, J., delivered the opinion of the Court.

This appeal concerns the admissibility of expert opinion in a workmen's compensation case offered by a nontreating psychiatrist whose testimony was based solely on a medical history furnished by the claimant. This evidence, admitted before the Workmen's Compensation Commission (the commission), led to an award in favor of the employee against appellees: the employer, the insurer and the Subsequent Injury Fund. On appeal, substantially the same testimony was presented to the Circuit Court for Anne Arundel County (Childs, J.), which granted a written motion filed by the employer and insurer to strike the disputed evidence produced on both occasions. Without this testimony, expert evidence to support an award was lacking; consequently, the court entered judgment for appellees. We granted a writ of certiorari prior to consideration of the case

by the Court of Special Appeals, and for reasons that follow, we shall affirm the decision of the circuit court.

While employed as a maid at the Friendship International Airport Hotel on February 12, 1971, appellant suffered an electric shock when she attempted to turn off a vacuum cleaner. She suffered no physical injury as a consequence, but claimed to experience myriad symptoms of an emotional nature for which she sought workmen's compensation. Although she received psychiatric treatment intermittently for some three years, on both an inpatient and outpatient basis, none of the psychiatrists who had treated her during this period testified before the commission or in the circuit court. Instead, appellant called Dr. Harry A. Teitelbaum, a psychiatrist to whom she had been referred by her attorney. Dr. Teitelbaum saw her on a total of seven occasions, four of which preceded the commission hearing, but not for the purpose of treatment. He consistently expressed the view in his written reports that appellant suffered from "psychoneurosis, post-traumatic, with severe emotional disturbance following electric shock . . . ," and testified accordingly before the commission and the circuit court. This opinion was controverted at the commission and circuit court hearings by a psychiatrist produced by appellees, who testified that appellant suffered from "a very severe personality disorder" which was not causally related to the electric shock and, in fact, antedated it.

In 1962, appellant, who suffered from congenital pulmonic stenosis, had undergone open-heart surgery at the Naval Medical Center at Bethesda, Maryland. In consequence of this prior history and Dr. Teitelbaum's opinion that as a result of the electric shock episode, appellant had sustained "an overall psychiatric disability of 75%," which he judged to be permanent, the commission found that appellant had incurred a 60% permanent partial industrial disability. Of this total, 50% was attributable to the accidental injury, manifested by the psychiatric condition, which became the responsibility of the employer and insurer. The remaining 10%, charged to the Subsequent Injury Fund, ensued from the further finding that the previous heart impairment was

a hindrance to appellant's employment, resulting in a permanent partial disability that was "substantially greater by reason of the combined effects of the impairment and subsequent injury." *See* Maryland Code (1957, 1964 Repl. Vol.) Art. 101, § 66.

The circuit court overturned the decision of the commission, ruling that Dr. Teitelbaum's testimony on both occasions was inadmissible there, since "his findings *were based largely upon the history* [furnished by appellant] *and also upon her representations of symptoms which she had experienced.*" (emphasis in original). In striking the testimony, the court rested its decision on the principle that the opinion of a physician is inadmissible when based upon the case history supplied by a patient, not for the purpose of obtaining treatment, but to qualify the physician as a medical expert. Since the commission was therefore left without "medical evidence before it to arrive at its allocation of percentage of the injury," and the remaining nonmedical testimony was "insufficient to sustain the findings and order of the [c]ommission," the court found "that [appellant] sustained no permanent industrial disability to her body as the result of the electric shock she sustained." For essentially the same reasons, the Subsequent Injury Fund was relieved of the liability which had been fastened upon it by the commission.

We have applied in this State the universally recognized principle that an attending physician may testify as to the medical history related to him by his patient, and may also state his conclusions reached on the strength of that history. *Adams v. Benson*, 208 Md. 261, 266-67, 117 A. 2d 881 (1955); *Yellow Cab Co. v. Henderson*, 183 Md. 546, 552-53, 39 A. 2d 546 (1944); *see Riddle v. Dickens*, 241 Md. 579, 581, 217 A. 2d 304 (1966). The same proposition has been applied in cases where the medical witness is a psychiatrist, *Wilhelm v. State Traffic Comm.*, 230 Md. 91, 97, 185 A. 2d 715 (1962); *Connor v. State*, 225 Md. 543, 556-57, 171 A. 2d 699, *cert. denied*, 368 U. S. 906 (1961); and in workmen's compensation cases, *see Fisher Body Division v. Alston*, 252 Md. 51, 54-55, 249 A. 2d 130 (1969). Such testimony is admitted under an

exception to the hearsay rule, the underlying rationale being that the patient's statements to his doctor are apt to be sincere when made with an awareness that the quality and success of the treatment may largely depend on the accuracy of the information provided the physician.

In Maryland, however, we have not extended this principle to include the case in which the patient's history has been reiated to a nontreating physician, *Rossello v. Friedel*, 243 Md. 234, 241-42, 220 A. 2d 537 (1966); *Wilhelm v. State Traffic Comm., supra,* 230 Md. at 97; *see Wolfinger v. Frey,* 223 Md. 184, 190-91, 162 A. 2d 745 (1960); *Parker v. State,* 189 Md. 244, 248-50, 55 A. 2d 784 (1947); in these instances, the trustworthiness which characterizes the declaration is no longer assured, since the patient is aware that the statements are being received primarily to enable the physician to prepare testimony on his behalf rather than for purposes of diagnosis and treatment.

We recognize that a number of states make a distinction which permits the nontreating physician to present his conclusions and the information, including the history received from the patient, upon which he has relied for those conclusions. In those states, the history is not admitted as substantive evidence, but merely for the nonhearsay purpose of explaining the conclusions reached by the physician. We have heretofore declined, however, to adopt this view despite the criticism aimed at our own more restrictive rule. *Adams v. Benson, supra,* 208 Md. at 267-69; *see generally* C. McCormick, Evidence § 293 (1972). In this case, we shall adhere to that position.

While Code (1957, 1964 Repl. Vol.) Art. 101, § 11, provides that the commission is not to "be bound by the usual common law or statutory rules of evidence," such evidence may be subject to rejection in the circuit court on a review *de novo.* The admissibility of hearsay testimony in workmen's compensation cases has been considered by this Court on a number of prior occasions. *See, e.g., Commercial Transfer v. Quasny,* 245 Md. 572, 227 A. 2d 20 (1967); *Spence v. Steel Co.,* 173 Md. 539, 549, 197 A. 302 (1938); *Horn Ice Cream Co. v. Yost,* 164 Md. 24, 163 A. 823 (1933); *Gas*

*Equipment Corp. v. Baldwin,* 152 Md. 321, 326, 136 A. 644 (1927); *Standard Oil Co. v. Mealey,* 147 Md. 249, 127 A. 850 (1925).

In *Standard Oil Co. v. Mealey, supra,* 147 Md. at 255, where, in upholding a lower court ruling that admitted statements which a deceased workman had made to his wife and his physicians to the effect that he had fallen and struck his side at a spot where a malignant growth later developed, the Court observed that the statements "refer[red] to a simple fact, and were such as to leave no room for substantial misunderstanding . . . ." In *Spence v. Steel Co., supra,* the only evidence of the cause of an alleged accident was the hearsay statements of the deceased to his wife and his physician. In holding the statements admissible, this Court, after reviewing a number of our prior cases, said:

> "This court has not said in any of the cases cited that the safeguards against the admission generally of hearsay evidence in compensation cases should be disregarded, but that it should be received with *great caution,* and so far has only approved the admission of statements of employees who, *because of their intervening deaths, could not testify* themselves, and then their hearsay statements have only been admitted when they have been made so promptly after the alleged injury and were so closely related to the facts and physical conditions as to give them *substantial probative value." Id.,* 173 Md. at 549-50 (emphasis added).

In the final analysis, as Judge Oppenheimer said for the Court in *Commercial Transfer v. Quasny, supra,* 245 Md. at 580, also a case involving the admissibility of a hearsay statement made by an employee to his wife shortly before his death, "this Court has been careful to formulate no binding rule [in workmen's compensation cases] to determine whether or not a hearsay statement of the nature here involved is admissible; it has laid down guidelines, but, as in other fields of the law, the cases have been decided on the particular facts." Although most, if not all, of the cases

approving the admissibility of hearsay in workmen's compensation cases appear to have involved the statement of a deceased employee describing a simple event, we continue to eschew the adoption of a binding rule, preferring to consider each case on its particular facts.

Here, the statements made by appellant are so lacking indicia of reliability as to deprive them, and consequently the medical witness's conclusions, of the probative value essential to their admissibility. *See Gas Equipment Corp. v. Baldwin, supra,* 152 Md. at 326. No treatment of any kind was rendered by the physician to whom appellant had been referred by her attorney to assist in the preparation of his testimony, nor was it contemplated that there be any treatment. As one might expect in the case of a psychiatrist, his examination consisted solely of hearing the subjective statements furnished by the claimant, and his conclusions were based exclusively on that information. The fact that she had seen the psychiatrist on four occasions prior to the commission hearing is of no consequence since none of those visits was for the purpose of treatment. The most significant fact, perhaps, is that appellant related the history to the psychiatrist knowing that it was merely for the purpose of qualifying him as a witness on her behalf. Manifestly, the area we are dealing with here, among the most complex in all of medical science, hardly lends itself to statements of "simple fact" calculated to leave "no room for substantial misunderstanding." *Standard Oil Co. v. Mealey, supra,* 147 Md. at 255.

Clearly, the statements on which the physician's conclusions were based cannot withstand the close scrutiny of hearsay testimony mandated by our prior decisions. We hold, therefore, that the circuit court properly struck the testimony presented by appellant's medical expert at both the commission and court hearings.

With appellant's case stripped of the psychiatric testimony, little need be said concerning the decision of the circuit court that the commission order was consequently unsupported by competent medical evidence or by sufficient nonexpert testimony. Since the case was tried in the *circuit*

court without a jury, the court, even given the prima facie correctness of the decision by the commission, was required to determine whether the commission had correctly construed the facts and, if not, how they should have been construed. *Greene v. Yeager*, 222 Md. 411, 414, 160 A. 2d 605 (1960). In other words, § 56 of the Workmen's Compensation Law, Code (1957, 1964 Repl. Vol.) Art. 101, authorizes a review of the facts as well as of the law. *Abell v. Goetze, Inc.*, 245 Md. 433, 437, 226 A. 2d 253 (1967); *Smith v. State Roads Comm.*, 240 Md. 525, 533, 214 A. 2d 792 (1965); *see Md. Bureau of Mines v. Powers*, 258 Md. 379, 382, 265 A. 2d 860 (1970).

The elimination of the psychiatric testimony offered by appellant left her without any expert testimony to support her claim of post-traumatic psychoneurosis. On the other hand, the court was confronted with the psychiatric testimony presented by appellees which unequivocally established that appellant's emotional problems antedated, rather than resulted from, the electric shock. The court was, therefore, free to find, as it did, that appellant suffered "no permanent industrial disability to her body as the result of the electric shock."

*Judgment affirmed; appellant to pay costs.*