950 A.2d 114

**STATE of Maryland**

v.

**Frederick Roscoe COATES.**

**No. 104, Sept. Term, 2007.**

Court of Appeals of Maryland.

June 13, 2008.

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for petitioner.

Anne K. Olesen, Assigned Public Defender (George Washington University Law School, Washington, DC), on brief, for respondent.

Argued before BELL, C.J., RAKER,[*] HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned) and DALE R. CATHELL, (Retired, Specially Assigned), JJ.

GREENE, J.

Frederick Roscoe Coates was convicted, in the Circuit Court for Montgomery County, of Second Degree Rape, Second Degree Sexual Offense, and Child Abuse. The State called two principal witnesses to testify in its case in chief: the

---

[*] Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

alleged victim, Jazmyne T., a minor, and Heidi Bresee, a nurse practitioner. Bresee interviewed and examined Jazmyne T. fourteen months after the alleged abuse had ended. Bresee testified that Jazmyne T. told her, during the interview, that Coates "put his private inside [her] private." After the interview and examination, Jazmyne T. asked Bresee, "Are you going to go out and find him now?"

We issued a writ of certiorari to determine whether Jazmyne T.'s statements to Bresee, given fourteen months after the alleged abuse, when Jazmyne T. was not exhibiting any physical manifestation of the abuse, constituted statements made for the purpose of medical treatment or diagnosis pursuant to Md. Rule 5–803(b)(4). *State v. Coates*, 402 Md. 355, 936 A.2d 852 (2007).

We hold that where, as in the present case, the circumstances indicate that the declarant was not aware that her statements to a medical practitioner were for purposes of medical treatment or diagnosis, the reliability of her statements is no longer assured, and therefore the statements are inadmissible under Md. Rule 5–803(b)(4). In addition, Jazmyne T.'s statement regarding the identity of her alleged abuser is inadmissible under this exception because the identity of the perpetrator is not ordinarily of strict medical importance, and Jazmyne T. was not aware that her statement was relevant to medical treatment or diagnosis.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2004, the Grand Jury for Montgomery County indicted Frederick Roscoe Coates, respondent, on two counts of Rape in the Second Degree, two counts of Sexual Offense in the Second Degree, and one count of Child Abuse. The alleged victim of these offenses is a minor named Jazmyne T. She was born on December 19, 1995, and the alleged acts took place in September 2002, but were not discovered until approximately one year later. At the time the alleged acts took place, Coates lived with Jazmyne T.'s mother, Kimberly Jenkins, and was involved in a romantic relationship

with Jenkins. Often, when Jenkins was away from home, she left Coates alone to care for Jazmyne T.

On March 18, 2005, Coates filed a Motion *in Limine*, asking the Circuit Court to exclude, *inter alia*, the testimony of Heidi Bresee, a nurse practitioner who was employed at the Shady Grove Adventist Hospital Sexual Abuse and Assault Center. Bresee is a forensic nurse practitioner.[1] At the time of trial, she had conducted over 500 sexual assault exams, and had testified in court approximately 56 times. Bresee examined Jazmyne T. on November 14, 2003,[2] when she obtained a patient history by interviewing Jazmyne T. and conducted an external vaginal examination. This meeting occurred in Bresee's office, which also served as an examination room.

In his Motion *in Limine*, Coates argued that Bresee's testimony would not assist the trier of fact, that it lacked a sufficient factual basis, and that it would invade the jury's role in judging the credibility of a witness. Coates also argued that Bresee's testimony would violate the Confrontation Clause of the United States Constitution.[3] In its response,

---

1. In her testimony, Bresee explained that she understood the word "forensic" to mean "to collect any evidentiary physical findings. It can be fingernail scrapings, it could be saliva from a bite mark or licking, it could be semen, it could be blood. I am looking to collect that forensic evidence as part of, you know, in what I do, a sexual assault examination."

2. Kimberly Jenkins, Jazmyne T.'s mother, did not take Jazmyne T. to either the doctor or the police after her daughter's initial disclosures, because, according to Jenkins, she thought she could find Coates on her own. She later took Jazmyne T. to see Bresee after a representative from Child Protective Services called to schedule an appointment.

3. On appeal, Coates no longer argues that Bresee's testimony violated the Confrontation Clause. It is worth noting that hearsay statements contained in Bresee's testimony at trial did not violate the Confrontation Clause because Jazmyne T. testified at trial. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (noting that "[w]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements."); *see also Lawson v. State*, 389 Md. 570, 587–89, 886 A.2d 876, 886–87 (2005) (determining that a child abuse victim's out-of court statements to a social worker did not violate the

filed April 4, 2005, the State noted that its intent in calling Bresee was to show that the physical findings upon examination were consistent with Jazmyne T.'s allegations of repeated abuse. The State argued that Bresee's testimony would not violate the Confrontation Clause, because Jazmyne T., the declarant, would testify at trial. The State further asserted that Jazmyne T.'s statements to Bresee were made for the purpose of medical diagnosis or treatment and therefore, should be permitted pursuant to Md. Rule 5–803(b)(4), even though the statements are hearsay.[4]

At a hearing on April 7, 2005, to exclude Bresee's testimony, the State noted that Bresee would not testify with regard to Coates' access to Jazmyne T., which was one of the reasons for Coates' objection to Bresee's testimony. On this basis, the court denied the motion, reasoning that "based on the State's proffer as to the limited questions they intend to ask about the interview with Jazmyne, and the issue of the physical findings as they relate to and [are] consistent with multiple acts of sexual intercourse [and/or] digital penetration."

Bresee testified, in relevant part, as follows: [5]

[BRESEE]: Ms. Jazmyne T. presented with her mother, Kimberly Jenkins. They were brought back to the waiting

---

Confrontation Clause because the defendant had the opportunity to cross-examine the child at trial). In the present case, Coates had the opportunity to cross-examine both Bresee and Jazmyne T. at trial. Although the issue before us does not implicate the Confrontation Clause, it does implicate the hearsay rule and any recognized exception to the hearsay rule.

4. The Court of Special Appeals noted in its opinion that the State did not attempt to introduce Jazmyne T.'s statements under the "tender years" exception to the hearsay rule, pursuant to Md.Code (2001, 2007 Supp.), § 11–304 of the Criminal Procedure Article. *Coates v. State,* 175 Md.App. 588, 593 n. 5, 930 A.2d 1140, 1143 n. 5 (2007). As neither party addressed the issue on appeal, we do not, and need not, decide whether Jazmyne T.'s statements to Bresee would be admissible under the "tender years" exception.

5. During Bresee's testimony, Coates' attorney repeated her objection to the admission of Bresee's testimony on the grounds that Jazmyne T.'s statements were irrelevant to diagnosis or treatment.

room, and I was notified that my patient was there. So, I went and brought her back to my office, which also serves as an examination, or an interview and an office area, and I introduced myself. I tell both Jazmyne and her mother, Kimberly, that I need to get some basic information on where she lives, who she lives with, things she does for fun, her medical history, and also go through what we call a "review of symptoms" and that's looking to see if she has any, you know, stomachaches or earaches or any complaints of illness today, the day that I see them.

[PROSECUTOR]: Why do you do that?

[BRESEE]: To determine if they are complaining of anything that would warrant for their medical assessment and treatment. You know, if she told me she was having, you know, pain when she urinated, then I would get a urinalysis or, you know, my treatment plan would be tailored accordingly. After I do the initial information, then I ask if it's all right if I speak with Jazmyne alone and I explain to her that it's very important that I hear from her why she's here to see me. And, you know, in this case, you know, it was not a problem for her to meet with me alone, so I showed her mother the waiting room.

\* \* \*

[PROSECUTOR]: If you could tell me specifically what Jazmyne told you during your interview?

[BRESEE]: After identifying the anatomical parts on the doll, I began the medical forensic interview, and I say the same thing to every child that I am a special nurse who works with kids who might have been touched in a way that hurt or bothered them and could they tell me if something like that had happened to them. And do you want me just to go through with what she said?

[PROSECUTOR]: If you could.

[BRESEE]: Okay. She said, and I asked her if she understood, and she said, "Yes, I do." And I asked, "Has anything like that ever happened to you?" and she said,

"Yes." And I asked if she could tell me about that, and her response was, "Well, the first one was Bikey.[6] He was my mother's ex-boyfriend. He put his private inside my private." I asked, "How many times did he do that to you?" and her response was, "A lot of times." I asked, "Do you remember when this happened?" and she said, "A long time ago." I asked, "Do you remember how old you were?" and she said "No."

I asked her if Bikey had made her do anything else and she said, "Yes. He made me lick his private, and he would lick my private too." I asked if she ever saw anything come out of his private, and she said, "Yes, white stuff." And then I asked her if Bikey had, "Did Bikey tell you not to tell anyone?" and she said, "Yes. He told me not to tell my mommy. He told me if I would let him do it to me, then I could go see my mommy and he would also let me smoke a cigarette."

I asked, "You smoked a cigarette?" because it kind of took me off guard, and she responded, "Yes. Bikey gave it to me after he put his private in me."

\* \* \*

I asked her, "Do you remember if it hurt when he did that?" and she said, "Yes. It hurt a lot. I cried." I asked her if she ever remembered seeing blood. She said, "Only when Carl [7] put his fingers inside me. That made me bleed." So I asked her to finish talking about Bikey before she told me about anything else, and she agreed. And I asked, "Is there anything else about Bikey I should know?" and she said, "Yes. He did it to my friend Eomy," and then she spelled her friend's name, E–O–M–Y. "He touched her butt, but she won't tell her mommy. Her mommy's name is

---

6. In its opening statement, the State told the jury that Coates is known as Bikey.

7. Jazmyne T. identified Carl as her grandmother's boyfriend. At the time of Coates' trial, Carl Edmonds was deceased.

Mikko. Eomy will talk to me and her friends about it, but she doesn't want to talk to her mommy about it."

And I asked at that point if she, if Jazmyne had told Ms. Karen Vasserman, the CPS worker, about her friend Eomy, and she said, "Yes." And then I asked specifically if Bikey had ever shown her pictures of people without their clothes on, and she said, "Yes. He showed me pictures in magazines and a movie on TV." And then I asked if there was anything else about Bikey I should know, and she asked me, "Are you going to go out and find him now?" and I responded, "No, but Detective Buckley is working hard to find him."

On May 25, 2005, after a trial in the Circuit Court, the jury returned a verdict of guilty to one count of Second Degree Rape, one count of Second Degree Sexual Offense, and one count of Child Abuse. Because the jury did not reach a verdict on the second count of Second Degree Rape and the second count of Second Degree Sexual Offense, the court declared a mistrial as to those counts. On October 13, 2005, the court imposed a sentence of 20 years each for the Second Degree Rape conviction and the Second Degree Sexual Offense, to run concurrently, and a consecutive 15 year sentence for the Child Abuse conviction. On October 20, 2005, Coates noted an appeal to the Court of Special Appeals.

The intermediate appellate court reversed the judgment of the Circuit Court, on the basis that Bresee's testimony was improperly admitted, and that the admission of her testimony was prejudicial. *Coates v. State,* 175 Md.App. 588, 629, 930 A.2d 1140, 1163–64 (2007). The court noted that Coates' identity, as revealed by Jazmyne T. to Bresee, was not pathologically germane to treatment, and therefore did not qualify under the hearsay exception. *Id.* at 627–28, 930 A.2d at 1163. Furthermore, the court pointed out that although Bresee had a dual purpose for her interview and examination, both medical and investigatory, her overarching purpose was investigatory. *Id.* at 627, 930 A.2d at 1162. Finally, the court noted that, given the significant time delay between the alleged abuse and the interview by Bresee, coupled with the fact that Jazmyne T. was not experiencing any medical problems at the

time of the interview, it is unlikely that Jazmyne T. understood the medical purpose for the interview. *Id.* at 628–29, 930 A.2d at 1163.

Thereafter, the State filed a petition for writ of certiorari in this Court, which we granted.[8] *State v. Coates*, 402 Md. 355, 936 A.2d 852 (2007).

## DISCUSSION

■ It is clear that a medical practitioner who has been admitted as an expert at trial can testify about his or her observations made during an examination, and his or her medical conclusions, including symptoms and history received from the patient during the course of the examination. *State v. Allewalt*, 308 Md. 89, 98, 517 A.2d 741, 745 (1986). In *Beahm v. Shortall*, 279 Md. 321, 368 A.2d 1005 (1977), this Court held that statements of existing pain or feeling, past symptoms and medical history, made by the patient to the expert medical practitioner, are admitted not for their truth, but as a basis for the medical practitioner's opinion, formed as a result of the patient's statements. *Beahm*, 279 Md. at 327, 368 A.2d at 1009. In the present case, the statements made by Jazmyne T. to Bresee were offered for their truth, and we must therefore determine whether they are hearsay, and if so, whether they fall within any recognized exception to the hearsay rule.

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

---

8. The State presented the following question in its petition for writ of certiorari:

> Where a child sexual abuse victim delayed reporting and was not given a full medical examination by a pediatric nurse practitioner until fourteen months after the sexual abuse ended, and the child did not physically manifest any illness or injury at the time she was seen, did the Court of Special Appeals err in holding that the child's statements to the nurse practitioner did not fall within the hearsay exception for statements made for the purpose of medical treatment or diagnosis?

Md. Rule 5–801(c). There are two threshold questions, therefore, to determine whether evidence qualifies as hearsay: "(1) whether the declaration at issue is a 'statement,' and (2) whether it is offered for the truth of the matter asserted." *Bernadyn v. State,* 390 Md. 1, 10, 887 A.2d 602, 607 (2005). In the present case, Jazmyne T.'s statements to Bresee, as recounted by Bresee through her testimony, are hearsay, because they are statements offered for their truth.

■ Hearsay is not admissible at trial, unless it qualifies under a recognized exception or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802. *See also Myer v. State,* 403 Md. 463, 479, 943 A.2d 615, 624 (2008). The rationale for "the hearsay rule is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination." 5 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, § 1420 at 251 (Chadbourn rev. ed. 1974). We have said that "[t]he hearsay rule prevents using out-of-court statements for their truth because such statements are unreliable bases from which to infer the declarant's beliefs (the declarant may have been insincere or used ambiguous language), or the accuracy of those beliefs (the declarant's perception or memory may have been faulty)." *Bernadyn,* 390 Md. at 14, 887 A.2d at 610. The exceptions to the hearsay rule are derived from the principle that under certain circumstances, "the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be [superfluous]." WIGMORE, § 1420 at 251. One such exception is now embodied in Md. Rule 5–803(b)(4). This rule provides, in relevant part, that:

"[s]tatements made for purposes of medical treatment or medical diagnosis in contemplation of treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external sources thereof insofar as reasonably pertinent to treatment or diagnosis in contemplation of treatment"

are not excluded by the hearsay rule. The rationale underlying this particular exception is that "the patient's statements to his [or her] doctor are apt to be sincere when made with an awareness that the quality and success of the treatment may largely depend on the accuracy of the information provided the physician." *Candella v. Subsequent Injury Fund,* 277 Md. 120, 124, 353 A.2d 263, 265 (1976); *see also Webster v. State,* 151 Md.App. 527, 536, 827 A.2d 910, 914–15 (2003) (noting that "the patient's statements are apt to be sincere and reliable because the patient knows that the quality and success of the treatment depends upon the accuracy of the information presented to the physician") (quoting *In re Rachel T.,* 77 Md.App. 20, 33, 549 A.2d 27, 34 (1988)).

■ This exception, however, does not apply to cases in which a non-treating physician is merely preparing to testify on the patient's behalf. *Candella,* 277 Md. at 124, 353 A.2d at 265; *Yellow Cab Co. v. Hicks,* 224 Md. 563, 571, 168 A.2d 501, 505 (1961) (noting that a physician whose sole purpose was to testify in court does not come within the exception to the hearsay rule); *see also Maryland Dep't of Human Resources v. Bo Peep Day Nursery,* 317 Md. 573, 589, 565 A.2d 1015, 1023 (1989) (determining that "as a general proposition, statements of medical history, made by a patient to a treating medical practitioner for the purpose of treatment, may be admitted as substantive evidence through the medical witness. If the medical practitioner is engaged only to render an expert opinion, and not for purposes of treatment, statements of history related by the patient are admissible through that witness for the limited purpose of explaining the basis for the expert's opinion."). The rationale for the distinction is that, in the latter scenario, "the trustworthiness which characterizes the declaration is no longer assured, since the patient is aware that the statements are being received primarily to enable the physician to prepare testimony on his behalf rather than for purposes of diagnosis or treatment." *Candella,* 277 Md. at 124, 353 A.2d at 265–66.

■ The Court of Special Appeals determined, in the present case, and we agree, that, viewing the evidence in the light most favorable to the State, Bresee did have a legally cognizable present medical reason[9] for interviewing Jazmyne. *Coates,* 175 Md.App. at 626, 930 A.2d at 1162. It is evident that Bresee also had a forensic purpose for examining Jazmyne. The Court of Special Appeals, in *Webster,* 151 Md.App. at 544–48, 827 A.2d at 919–22, discussed, for the first time, whether a statement made for dual forensic and medical purposes was admissible under Md. Rule 5–803(b)(4). In *Webster,* the relevant statement was one that was made by a child sexual assault victim to a Sexual Assault Forensic Examination ("SAFE") nurse. *Webster,* 151 Md.App. at 530, 827 A.2d at 911. In its analysis, the court noted that "[i]f the challenged statement has some value in diagnosis or treatment, the patient would still have the requisite motive for providing the type of 'sincere and reliable' information that is important to diagnosis and treatment." *Id.* at 545–46, 827 A.2d at 920. Ultimately, the intermediate appellate court held that the existence of dual medical and forensic purposes for an examination did not disqualify an otherwise admissible statement under Rule 5–803(b)(4). *Id.* at 546, 827 A.2d at 921.

We agree that Bresee had a dual purpose in examining Jazmyne T., and that the overarching purpose was forensic in nature. As the intermediate appellate court observed: "[Bresee] clearly sought information as to the identity of the perpetrator and the details of his criminal misconduct. At least some of her questions were in the nature of a child-friendly interrogation, akin to a prosecutorial probing of 'who-dunnit,' rather than an inquiry related to medical concerns." *Coates,* 175 Md.App. at 627, 930 A.2d at 1162. Furthermore, "questions such as 'How many times did [Coates] do that to you?' ... were not 'pathologically germane' to treatment or diagnosis." *Coates,* 175 Md.App. at 627, 930 A.2d at 1162.

---

**9.** The intermediate appellate court noted that Bresee's "questions were posed in contemplation of securing treatment for Jazmyne in the event that she suffered a latent injury or contracted a sexually transmitted disease." *Coates,* 175 Md.App. at 626, 930 A.2d at 1162.

*See State v. Snowden,* 385 Md. 64, 91, 867 A.2d 314, 329 (2005) (noting that "[t]he fact that there is a therapeutic element to the interviews does not eclipse the overriding fact that the interviews were designed to develop testimony that may be used at trial."). More important, however, than whether the medical practitioner believed there was a dual purpose for the examination is whether the declarant believed that there was a medical purpose for the examination. *See Candella,* 277 Md. at 124, 353 A.2d at 265–66. Given the facts of this case, again, we agree with the intermediate appellate court that it is unlikely that Jazmyne T. believed that there was a medical purpose for Bresee's examination.[10]

Accordingly, with regard to the medical hearsay exception, the circumstances of the present case are such that we cannot say that Jazmyne T. had the "requisite motive for providing the type of 'sincere and reliable' information that is important to [ ] diagnosis and treatment." *Webster,* 151 Md.App. at 545–46, 827 A.2d at 920. For instance, the court's emphasis, in *Webster,* was on the fact that the victim's statement was "pathologically germane" to treatment by a hospital nurse in an emergency setting. *Webster,* 151 Md.App. at 546, 827 A.2d at 920. We have said that a "pathologically germane" statement is one that falls "within the broad range of facts which under hospital practice are considered relevant to the diagnosis or treatment of the patient's condition." *Yellow Cab,* 224

---

10. The Court of Special Appeals, in *Coates,* noted:

"Simply put, we cannot glean from this record the basis on which Jazmyne would have understood that she was being seen for medical treatment or diagnosis, some fourteen months after the last sexual abuse incident, and three weeks after her disclosure to her mother of what had occurred. For example, there is no indication that Jazmyne had any understanding, at her age, that she was at continued risk of developing a latent, sexually transmitted disease or HIV. Moreover, most eight-year-olds would not discern emergent circumstances or medical necessity in the absence of any medical complaints or symptoms. And Jazmyne's inquiry as to whether Bresee would find Coates suggest that Jazmyne did not perceive that there was a medical purpose—or even a dual purpose—for the examination."

*Coates,* 175 Md.App. at 628, 930 A.2d at 1163.

Md. at 570, 168 A.2d at 504. In the case at bar, however, there was no emergency situation that would render Jazmyne T.'s statements to Bresee reasonably pertinent to diagnosis or treatment.

In *In re Rachel T.*, the Court of Special Appeals determined that statements made by a child sexual assault victim, Rachel T., regarding the identity of her abuser were admissible under the "treating physician" exception to the rule against hearsay. *In re Rachel T.*, 77 Md.App. at 33, 549 A.2d at 33. The intermediate appellate court focused on the declarant's state of mind, and noted that a social worker had explained to Rachel T. that she was there "because we were worried and wanted to see why there had been blood in her panties and in the toilet." *In re Rachel T.*, 77 Md.App. at 35, 549 A.2d at 34. This is significant because Rachel T.'s symptoms, present at the time of the interview, were the reason for her visit to the doctor. *Id.* The fact that, in this case, Jazmyne T. did not present with any symptoms at the time of her examination with Bresee, although not dispositive, decreases the likelihood that Jazmyne T. believed the purpose of Bresee's interview and examination was medical, and not forensic, in nature.

█ Because the underlying rationale for the exception is that a patient's statements are likely to be sincere when "made with an awareness that the quality and success of the treatment may largely depend on the accuracy of the information provided," the relevant state of mind is the patient's. *See Candella*, 277 Md. at 124, 353 A.2d at 265. Jazmyne T.'s question to Bresee, following the interview, "are you going to go out and find him now?" suggests that Jazmyne T. believed she was being interviewed primarily for an investigatory, and not a medical, purpose. It is also noteworthy that at the time Bresee interviewed and examined Jazmyne T., she was not exhibiting any physical manifestation of abuse.[11] Although a

---

11. According to the State, when Jazmyne T. was later examined in March, 2004, she was diagnosed with genital herpes. This examination, however, occurred approximately four months after Bresee examined Jazmyne T.

patient's lack of symptoms is not dispositive, in combination with Jazmyne T.'s young age, length of time since the last incident, and her question to Bresee about finding Coates, the facts of this case suggest that Jazmyne T.'s statements lack the indicia of sincerity that underlie the hearsay exception.

To determine whether a statement is made for purposes of medical treatment or medical diagnosis such that it is admissible pursuant to Md. Rule 5–803(b)(4), the medical professional's opinion as to whether there was a medical purpose to the exam or interview is only relevant to the extent that it affected the patient's perception. *See Candella,* 277 Md. at 124, 353 A.2d at 265. The State argues that Coates' identity was "pathologically germane" to diagnosis or treatment because Jazmyne T. may have contracted a sexually transmitted infection, and Bresee could then have Jazmyne T. tested. On the facts of this case, we reject that contention.

A declarant's statements about the cause of an injury or identity of a culprit must be related to diagnosis or treatment to be admissible pursuant to Md. Rule 5–803(b)(4). Statements to a medical practitioner as to the identity of the person who caused an injury are unlikely to be regarded by the declarant as related to diagnosis or treatment. *Cassidy v. State,* 74 Md.App. 1, 27, 536 A.2d 666, 678–79 (1988). Such statements lack the indicia of reliability that underlie the hearsay exception embodied in Md. Rule 5–803(b)(4), because it is unlikely that a patient would believe statements fixing fault to an individual to be relevant to diagnosis or treatment. *Id.* In *Cassidy,* the Court of Special Appeals determined that the out of court statement that "Daddy did this," given by a two-year-old abuse victim to the treating physician, failed to qualify under the exception to the hearsay rule for statements to physicians. *Id.* at 29, 536 A.2d at 680. The intermediate appellate court reasoned that, at the young age of two, the declarant was unable to understand the purpose of the doctor's questions, and therefore did not have the self-interested motive to tell the truth that underlies the exception. *Cassidy,* 74 Md.App. at 29–30, 536 A.2d at 680.

■ Likewise, in this case, it is unlikely that Jazmyne T., who was seven years old at the time she made the statements to Bresee, would have been aware that Coates' identity was medically relevant to her exposure to sexually transmitted infections. Moreover, there is no indication from the manner in which the interview was conducted that the transmission of communicable diseases was an issue, or relevant to the identity of the perpetrator. Jazmyne T.'s statement was not given in response to a question by Bresee asking Jazmyne T. who had assaulted her for purposes of determining whether she had been exposed to a sexually transmitted infection. Rather, it appears from the record that the child's motive was to "get" Coates because, apparently, he had not been apprehended and her mother had been unable to locate him. "The declarant's subjective purpose in making the statement to the physician is therefore vitally important in determining whether the exception should apply." *In re Rachel T.*, 77 Md.App. at 34, 549 A.2d at 34. Because the relevant state of mind is that of the declarant, Jazmyne T.'s statement with regard to Coates' identity, as communicated to Bresee, does not qualify as a statement made for the purpose of medical treatment or medical diagnosis pursuant to Md. Rule 5–803(b)(4).

## CONCLUSION

The hearsay exception embodied in Md. Rule 5–803(b)(4) is founded on the principle that a patient's statements to a medical practitioner are likely to be reliable, because the patient is aware that the success of diagnosis and treatment depends on the accuracy of his or her providing a medical practitioner with accurate information. Because the facts of this case indicate that Jazmyne T. was not aware that the purpose of her statements was for medical diagnosis or treatment, the reliability of the her statements is no longer presumed, and the hearsay statements are inadmissible under Md. Rule 5–803(b)(4). Finally, because Jazmyne T. was likely unaware that her statement identifying Coates was "pathologically germane" to treatment, that statement is not admissible under Md. Rule 5–803(b)(4).

148

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. MONTGOMERY COUNTY TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.