# IN THE SUPREME COURT OF IOWA

No. 18–0457

Filed November 22, 2019

**STATE OF IOWA,**

Appellee,

vs.

**LAWRENCE EUGENE WALKER,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, John D. Telleen (trial) and Patrick A. McElyea (sentencing), Judges.

Lawrence Walker appeals his conviction for sexual abuse in the second degree and lascivious acts with a child. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Timothy M. Hau, Assistant Attorney General, Mike Walton, County Attorney, and Kimberly Shepherd, Assistant County Attorney, for appellee.

**McDONALD, Justice.**

Following a jury trial, Lawrence Walker was convicted of sexual abuse in the second degree, in violation of Iowa Code section 709.3 (2016), and lascivious acts with a child, in violation of Iowa Code section 709.8(1)(*a*) and (*c*). In this direct appeal, Walker raises three evidentiary issues. The first relates to the exclusion of evidence. The second relates to the allegedly erroneous admission of certain hearsay testimony. The third also relates to the allegedly erroneous admission of certain hearsay testimony, but the third issue is raised within the framework of a claim of ineffective assistance of counsel.

I.

The offense conduct occurred in June 2016. On the night at issue, Walker babysat his four-year-old niece, E.W., her eight-year-old brother, J.W., and another child. At some point in the evening, Walker took E.W. upstairs to her parents' bedroom. He cuddled in bed with her. He removed her underwear, removed his pants, put her on his lap, bounced her up and down, and rubbed the child's genitals with his hand.

The next day E.W. made statements to her mother that prompted an emergency room visit. At the emergency room, sexual assault nurse examiner Elsa Durr-Baxter interviewed E.W. and E.W.'s mother separately. E.W.'s statements to Durr-Baxter inculpated Walker for sexual abuse of E.W. Durr-Baxter conducted a physical and forensic examination of E.W. Division of Criminal Investigation (DCI) tests of the samples showed the presence of a sperm cell in E.W.'s external anal swab and foreign DNA in the crotch of E.W.'s underwear and on her back. The samples were too weak for reliable comparison to an individual for matching purposes.

Durr-Baxter referred E.W. to Dr. Barbara Harre, a physician at the Child Protection Response Center. A little more than two weeks after the night at issue, Dr. Harre met with E.W. and her mother. Dr. Harre interviewed them separately. Dr. Harre conducted a medical exam of E.W. During the exam, E.W. made statements inculpating Walker for sexual abuse. Dr. Harre testified she asked E.W. if there had been anything about Walker that made her uncomfortable. E.W. stated, "Larry doing this" and then made a bouncing motion. E.W. stated Walker's underwear was off and he took her underwear off. Dr. Harre testified E.W. said she was "on his crotch" at that time. Dr. Harre asked E.W. if Walker touched her on other parts of her body. E.W. indicated Walker touched her with his fingers between her legs and it hurt.

Approximately a week after E.W's appointment with Dr. Harre, Detective Maureen Hammes conducted a video-recorded interview with Walker. Walker initially denied any wrongdoing, but then he admitted to the offense conduct. Walker admitted to taking E.W. upstairs and laying in bed with her. He said he took off her panties and took off his pants. He said he "cuddled with her." He later admitted he put E.W. on his lap while in the bed. He admitted to rubbing his hand against E.W.'s vagina. Walker was arrested and charged thereafter.

The jury found Walker guilty as charged, and Walker timely filed this appeal. The court of appeals affirmed Walker's convictions, and we granted Walker's application for further review.

II.

A.

We turn to Walker's first evidentiary challenge. At trial, Walker sought to admit evidence concerning the victim's eight-year-old brother, J.W. Specifically, Walker wanted to introduce into evidence statements

the parents allegedly made that J.W. may have been a victim of sexual abuse. According to defense counsel, the mother also stated that she observed J.W. "engaged in staring at E.W.'s body," that she wanted the siblings clothed when they were together, and that she "found it necessary to separate" them. Walker contended the evidence was relevant to show E.W. learned age-inappropriate sexual information from J.W. or J.W.—rather than Walker—was the abuser. The State moved in limine to exclude the evidence. The district court granted the State's motion, concluding the evidence was not relevant. The district court also concluded if the evidence was relevant, it was only marginally relevant but was unduly prejudicial, likely to confuse the issues, and excluded by Iowa Rule of Evidence 5.412.

Our review is for an abuse of discretion. *See State v. Tipton*, 897 N.W.2d 653, 691 (Iowa 2017) ("The district court rulings on relevance of evidence are reviewable for abuse of discretion, as are challenges to the admission of evidence under Iowa Rule of Evidence 5.403."); *State v. Mitchell*, 568 N.W.2d 493, 497 (Iowa 1997) (applying abuse of discretion standard to rulings regarding rule 5.412). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Tipton*, 897 N.W.2d at 690 (quoting *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003)).

It is arguable whether the evidence is even relevant. Evidence is relevant when "[i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. It is certainly true "that a child victim's sexual knowledge [that] resulted from an encounter with someone other than the defendant may be relevant and material to a defendant's defense of mistaken identity or false accusation." *State v. Cecil*

*J.*, 913 A.2d 505, 512 (Conn. App. Ct. 2007); *see State v. Clarke*, 343 N.W.2d 158, 162–63 (Iowa 1984) (overturning the district court's decision to allow evidence of a complainant's sexual history at trial because the defendant did not have evidence of a previous sexual encounter, nor did he show that the "complainant would more likely have fantasized" the sex act if there had been a previous sexual encounter). However, there must be some evidence of a prior encounter with someone other than the defendant.

Here, Walker failed to make an offer of proof establishing there was in fact an encounter between J.W. and E.W. Instead, at best, the record reflects the parents had concerns J.W. may have been a victim of sexual abuse. There is no evidence J.W. sexually abused E.W. or otherwise had an encounter with E.W. The defendant's argument is simply speculation. *See State v. Gorman*, 468 S.W.3d 428, 432 (Mo. Ct. App. 2015) (affirming decision to exclude evidence of other abuse to establish mistaken identity where it was mere speculation).

Even if the evidence were marginally relevant, the district court did not abuse its discretion in excluding the evidence on the ground that it was unduly prejudicial. Walker contends the evidence falls outside the scope of rule 5.412. Where evidence falls outside the scope of rule 5.412, the evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Iowa R. Evid. 5.403. "Under rule 5.403, the primary focus is not upon the witness, but the interests of the defendant and the right of the defendant to present a defense." *State v. Alberts*, 722 N.W.2d 402, 411 (Iowa 2006). Here, the proposed evidence was, at best, only marginally relevant. But the proposed evidence would have merely

confused the issues, misled the jury, and created multiple trials within the trial. Under the defendant's theory of relevance, the jury would have had to determine whether J.W. had been sexually abused. Then the jury would have had to determine whether J.W. had some sort of encounter that would have provided E.W. with age-inappropriate sexual information or would have caused E.W. to confuse abuse at the hands of her eight-year-old brother with abuse at the hands of her twenty-six-year-old uncle. We cannot say the district court's decision was clearly untenable or clearly unreasonable. *See Tipton*, 897 N.W.2d at 691.

If Walker had made an offer of proof establishing a sexual encounter between J.W. and E.W., the proposed evidence would have fallen within the scope of rule 5.412. Under rule 5.412, a victim's "other sexual behavior" includes any sex act, regardless of the act's consensual or nonconsensual nature. *See State v. Jones*, 490 N.W.2d 787, 790 (Iowa 1992) (holding that rule 412 (now rule 5.412 as amended in 2016) "clearly encompasses prior sexual abuse perpetrated upon the victim"), *overruled on other grounds by State v. Plain*, 898 N.W.2d 801 (Iowa 2017). Where a defendant seeks to offer evidence excepted from rule 5.412, "the defendant must[] . . . [f]ile a motion to offer the evidence at least 14 days before trial." Iowa R. Evid. 5.412(*c*)(1)(A).

Here, the district court found the defendant failed to file a timely motion and held the evidence was inadmissible. The defendant does not contest the finding. Nor does the defendant seek to excuse his failure to timely file notice. *See id.* (requiring fourteen-day notice "unless the court determines that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence, or that the evidence relates to an issue that has newly arisen in the case, and the court sets a

different time"). The district court's decision was not clearly untenable or clearly unreasonable. *See Tipton*, 897 N.W.2d at 691.

For these reasons, we conclude the district court did not abuse its discretion in excluding Walker's evidence regarding J.W.

### B.

Walker next contends the district court erred in allowing Dr. Harre to testify about E.W.'s statements regarding sexual abuse and identifying Walker as the abuser. Our review is for the correction of legal error. *See State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016) ("Although we normally review evidence-admission decisions by the district court for an abuse of discretion, we review hearsay claims for correction of errors at law."); *State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003); *State v. Long*, 628 N.W.2d 440, 447 (Iowa 2001) (en banc). While reviewing the district court's decision for legal error, the court "give[s] deference to the district court's factual findings." *Long*, 628 N.W.2d at 447 (stating correction of legal error standard includes deference to factual findings).

As a general rule, hearsay testimony is inadmissible. *See* Iowa R. Evid. 5.802. There are numerous exceptions to the general rule, however. At issue here is the medical diagnosis or treatment exception. *See id.* r. 5.803(4). A statement falls within the medical diagnosis or treatment exception if the statement:

> (A) Is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

> (B) Describes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations.

*Id.* r. 5.803(4). "The rationale for the exception is that statements made by a patient to a doctor for purposes of medical diagnosis or treatment are 'likely to be reliable because the patient has a selfish motive to be

truthful.' " *Smith*, 876 N.W.2d at 185 (quoting 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.06[1], at 803–42 (Mark S. Brodin ed., 2d ed. 2015)).

In *State v. Tracy* we held that a child-declarant's identification of an abuser during treatment with a healthcare professional would fall within the exception when "the declarant's motive in making the statement [was] consistent with the purposes of promoting treatment" and was of the type "reasonably relied on by a physician in treatment or diagnosis." 482 N.W.2d 675, 681 (Iowa 1992) (quoting *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985)). Although testimony of this type is frequently admitted into evidence, there is no categorical rule allowing such testimony. *See Smith*, 876 N.W.2d at 188 (rejecting the state's argument "that statements of identity by victims of domestic abuse should be categorically admissible because such statements are now commonly admitted in cases of child abuse").

> Instead, . . . the trial court must, as with other statements made during medical diagnosis and treatment, apply the test we adopted in *Tracy* to determine whether the statements made in that case should fall within this exception to the hearsay rule.

*Id.* at 188–89. "The State, as the proponent of the evidence, has the burden" to establish the testimony comes within the exception to the rule. *See id.* at 189.

With respect to the first element of the *Tracy* test, there was sufficient evidence to establish E.W.'s "motive in making the statement[s] [was] consistent with the purposes of promoting treatment." *Tracy*, 482 N.W.2d at 681. In cases of child sexual abuse, ascertaining the identity of the abuser is important for medical purposes because the child's age prevents her from implementing self-care and because parents are often

ill-equipped to elicit the abuser's identity. *See* Gail S. Goodman et al., *Children's Eyewitness Memory: The Influence of Cognitive and Socio-Emotional Factors*, 19 Roger Williams U. L. Rev. 476, 506–07 (2014) ("Supportive interviewers are needed who, while maintaining neutrality, can help maltreated children regulate anxieties, insecurities, and emotions, so that the interviewer can obtain the most accurate memory reports possible. . . . This may be especially true for maltreated children, who may lack trust and self-confidence as well as suffer from trauma-related symptoms, such as symptoms of PTSD, dissociation, or depression.").

The evidence shows E.W.'s mother took E.W. to see Dr. Harre for the purposes of treatment. There is no evidence the purpose of the visit was to create evidence or otherwise bolster the State's case. Dr. Harre took precautions to ensure E.W. felt comfortable in the setting and unpressured to say anything in particular. Dr. Harre testified she interviewed the child separately from the mother, subtly observed the child's developmental stage, and asked open-ended questions. Dr. Harre explained to the child in age-appropriate terms the purpose of the appointment. Dr. Harre explained she cares for kids who have injuries to their bodies and also injuries like hurt feelings. The record shows E.W. understood Dr. Harre's role. Dr. Harre testified E.W. expressed she was comfortable with doctors except when they give her shots. From there, Dr. Harre began a review-of-symptoms approach, checking to see "how the child [was] doing overall." This is sufficient foundation to meet the first part of the *Tracy* test. *See, e.g., State v. Tornquist*, 600 N.W.2d 301, 305–06 (Iowa 1999) (concluding "that the circumstances surrounding [the child]'s statements to [the medical provider] indicated that they were responses in a dialogue initiated for purposes of diagnosis or treatment"), *overruled on other grounds by*

*State v. DeCamp*, 622 N.W.2d 290 (Iowa 2001); *State v. Neitzel*, 801 N.W.2d 612, 622 (Iowa Ct. App. 2011) (stating the district court did not err in finding the first prong was met when a nurse explained her role in talking to the child about things that may have hurt or scared the child).

With respect to the second part of the *Tracy* test, we conclude the State established E.W.'s statements were of a type that are "reasonably relied on by a physician in treatment or diagnosis." *Tracy*, 482 N.W.2d at 681 (quoting *Renville*, 779 F.2d at 436). Dr. Harre met with E.W. for healthcare purposes. Dr. Harre testified she offers "comprehensive medical assessments for concerns about medical, behavioral," and emotional needs of children. She conducted a mental and physical examination of E.W. according to her standard protocol. Further, Dr. Harre testified E.W. was still her patient at the time of the trial. Statements made by patients "in connection with diagnosis or treatment of emotional trauma" can fall within the exception, so long as the statements are made to professionals "sufficiently qualified by training and experience to provide that diagnosis and treatment." *State v. Hildreth*, 582 N.W.2d 167, 169 (Iowa 1998).

Walker contends the purpose of the visit was not for medical diagnosis because there was an eighteen-day delay between the assault and E.W.'s appointment with Dr. Harre. We disagree. Under the circumstances, the delay is not material. In the case of sexual abuse, the victim may suffer from and seek treatment for "emotional and psychological injuries" in addition to physical injuries caused by the abuse. *Smith*, 876 N.W.2d at 186. The emotional and psychological injuries may linger longer than the physical injuries. Given this fact, an eighteen-day delay between the incident and appointment is of short duration. Or, at least it is not a sufficiently long delay to conclude E.W.'s

appointment with Dr. Harre served no medical purpose. *See, e.g., In re J.C.*, 877 N.W.2d 447, 457 (Iowa 2016) (noting, in Confrontation Clause analysis, child interview with Dr. Harre was not primarily for testimonial purposes but for medical treatment and citing similar testimony).

Walker's reliance on the Maryland case of *Coates v. State* is misplaced. 930 A.2d 1140, 1163 (Md. Ct. Spec. App. 2007), *aff'd*, 950 A.2d 114, 124 (Md. 2008). *Coates* is readily distinguishable. In *Coates*, there was a fourteen-month delay between the offense conduct and the appointment, no active medical concern, and a finding of an investigatory purpose. *Id.* In addition, Maryland has specifically rejected the more liberal two-part test we adopted in *Tracy*. *See Cassidy v. State*, 536 A.2d 666, 688 (Md. Ct. Spec. App. 1988) (stating "Maryland has rejected" the two-part test).

E.W.'s statements to Dr. Harre meet the requirements of medical statements for the purpose of diagnosis or treatment; the district court did not err in allowing the testimony at trial.

C.

In his third claim, Walker contends his counsel was ineffective in failing to object to nurse Durr-Baxter's testimony recounting E.W.'s and E.W.'s mother's statements identifying Walker as the abuser. He contends his counsel was also ineffective and further compounded the error by eliciting additional damaging hearsay testimony from Durr-Baxter on cross-examination. Pursuant to *State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019), we have the authority to decide Walker's claim of ineffective assistance of counsel on direct appeal.

To establish his claim of ineffective assistance of counsel, Walker must show his trial counsel failed to perform an essential duty and counsel's failure resulted in constitutional prejudice. *See State v. Webster,*

865 N.W.2d 223, 231 (Iowa 2015). To establish constitutional prejudice, the defendant is required to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "It is not enough for the defendant to show that the errors had [only] some . . . effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

On de novo review, we conclude the record is sufficient to resolve these claims on direct appeal. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015) (noting ineffective-assistance claims are generally preserved for postconviction-relief proceedings but may be addressed on direct appeal when the record is sufficiently developed). We elect to bypass the question of whether counsel breached a duty in any of the particulars raised and instead focus on the question of whether the defendant has established constitutional prejudice.

We conclude Walker failed to establish constitutional prejudice. There was overwhelming evidence of his guilt. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case."); *State v. Bumpus*, 459 N.W.2d 619, 627 (Iowa 1990) (determining prejudice did not result given overwhelming evidence of guilt). Further, Durr-Baxter's testimony was merely cumulative of properly admitted testimony. *See State v. Schaer*, 757 N.W.2d 630, 638 (Iowa 2008) (holding defendant did not establish *Strickland* prejudice where the challenged testimony was merely cumulative and the prosecutor's case was strong). E.W. testified regarding Walker's conduct. There were some minor inconsistencies in her

testimony, however, the inconsistencies were immaterial given her age. *See Hildreth*, 582 N.W.2d at 170 ("[A]ny inconsistencies in [the victim]'s testimony were minor and attributable to her young age. . . . '[A] person should not be able to escape punishment for such a disgusting crime because he has chosen to take carnal knowledge of an infant too young to testify clearly as to the time and details of such shocking activity.'" (Citation omitted.) (quoting *State v. Rankin,* 181 N.W.2d 169, 172 (Iowa 1970))). Dr. Harre testified about E.W.'s statements to her regarding Walker touching E.W. The physical evidence showed a sperm cell in E.W.'s underwear. Finally, Walker confessed to the conduct. His confession was recorded. A DVD of the confession was admitted into evidence. Even if counsel had breached an essential duty in not objecting to Durr-Baxter's testimony, the admission of the testimony does not amount to constitutional prejudice.

III.

For the foregoing reasons, we affirm the decision of the Court of Appeals and Walker's convictions and sentences.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Appel, J., and Wiggins, C.J., who concur specially.

14

**APPEL, Justice (concurring specially).**

I concur in most of the opinion in this case but have a somewhat different view on the evidentiary issues in this case.

Walker sought to introduce evidence tending to show (1) that J.W., a brother of the victim, had been sexually abused at some point; (2) that J.W. would stare inappropriately at the victim's, E.W.'s, body; and (3) that their mother was sufficiently concerned that she wanted to separate the children and make sure that they had clothes on when they were together. The point of the testimony was to suggest that to the extent E.W. had been the victim of sexual abuse, it was her brother J.W., and not Walker, who was the perpetrator of the crime.

The majority's narrow application of relevance in this case is concerning, as is its potential to be inappropriately applied in future cases. Under Iowa Rule of Evidence 5.401(*a*), "Evidence is relevant if: (*a*) It has *any tendency* to make a fact more or less probable than it would be without the evidence; and (*b*) The fact is of consequence in determining the action." Iowa R. Evid. 5.401 (emphasis added). Evidence of prior sexual abuse has consistently been found to be relevant in cases where a defendant seeks to show that the alleged victim's sexual knowledge comes from another source or that another individual perpetrated the crime. *See State v. Jacques*, 558 A.2d 706, 708 (Me. 1989) ("Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated the charge."); *State v. Grovenstein*, 530 S.E.2d 406, 411 (S.C. Ct. App. 2000) (holding "that evidence of a child victim's prior sexual experience is relevant to

demonstrate that the defendant is not necessarily the source of the victim's ability to testify about alleged sexual conduct"); *State v. Pulizzano*, 456 N.W.2d 325, 333 (Wis. 1990) ("Evidence of [a] prior sexual assault is probative of a material issue, to show an alternative source for sexual knowledge . . . ."). Under the theory that someone else was the perpetrator of the crime, the evidence Walker sought to admit passes the test of relevance. This evidence may not be powerful evidence, but it marginally tends to suggest that someone else living in the household may have been the perpetrator of the sexual abuse and not Walker.

Although relevant, such evidence is still subject to Iowa Rules of Evidence 5.412 and 5.403. I do not view this potential testimony as barred by Iowa Rule of Evidence 5.412. To the extent the evidence was offered to show a prior sexual assault by J.W., the rape shield law might apply. But to the extent the evidence tended to show that J.W. and not Walker was the perpetrator of the crime for which Walker was charged, it is not evidence of "other sexual behavior" of E.W. As noted by Walker, "if sexual abuse actually occurred it suggests a different perpetrator and the jury is free to conclude that it's possible that a 4 year old would confuse who the perpetrator actually was." Evidence admitted under this theory is outside the scope of Iowa Rule of Evidence 5.412.

That said, the remaining question is whether the evidence is admissible under Iowa Rule of Evidence 5.403, which provides in relevant part that evidence may be excluded if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Iowa R. Evid. 5.403. The district court concluded that the evidence, though marginally relevant, would mislead the jury, was highly prejudicial, and would confuse the

issues. The court further held that even if the eight-year-old brother J.W. had an interest in his sister, "that doesn't explain what happened here."

In order to be excluded under Iowa Rule of Evidence 5.403, the value of the evidence must be *substantially* outweighed by other dangers. That is ordinarily a very high hurdle. The district court's determination of the issue, however, is clothed with discretion and will be reversed only upon a showing of clear abuse. *See State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001) ("The abuse of discretion standard of review applicable in this matter recognizes that whether evidence of prior crimes should be admitted is a judgment call on the part of the trial court.").

In this case, I find analysis under Iowa Rule of Evidence 5.403 and harmless error tend to merge. Walker made many pretrial incriminating statements. He admitted putting E.W. on his lap to "cuddle" and confirmed that he had removed her underpants. He confirmed "that he rubbed her vagina with his hand." When confronted with E.W.'s account and asked if he needed help for his behavior, he nodded in agreement. In light of the record developed, it does not appear that Walker's rights were substantially affected or that there has been a miscarriage of justice. *See State v. Williams*, 574 N.W.2d 293, 298 (Iowa 1998) ("Not all errors require reversal. To warrant reversal the error must have prejudiced the defendant."); *State v. Traywick*, 468 N.W.2d 452, 454 (Iowa 1991) ("When an alleged error is not of constitutional magnitude, 'the test of prejudice [for harmless error] is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.'" (alteration in original) (quoting *State v. Massey*, 275 N.W.2d 436, 439 (Iowa 1979))). As a result, the failure to admit the offered evidence does not require a new trial in this case.

However, this is not to say that all evidence of this type will meet the same fate. When conducting Iowa Rule of Evidence 5.403-like balancing, a number of courts look to the similarity between the two instances and the strength of the offered evidence. *See State v. Oliver*, 760 P.2d 1071, 1077 (Ariz. 1988) (en banc) (adopting a two-pronged test to determine if the offered evidence was outweighed by the dangers enumerated in Arizona's corresponding evidentiary rule 403: (1) "defendant must show, *in camera,* that the victim previously had been exposed to a sexual act" and (2) "defendant must establish that the prior sexual act was sufficiently similar to the present sexual act to give the victim the experience and ability to contrive or imagine the molestation charge"); *see also Commonwealth v. Ruffen,* 507 N.E.2d 684, 687–88 (Mass. 1987) ("If the victim had been sexually abused in the past in a manner similar to the abuse in the instant case, such evidence would be admissible at trial because it is relevant on the issue of the victim's knowledge about sexual matters."). But the real danger of the majority's position is the categorical exclusion, or diminishment, of evidence of prior sexual abuse as irrelevant or inconsequential. *See State v. Carver*, 678 P.2d 842, 844 (Wash. Ct. App. 1984) ("We fail to see how prior sexual abuse visited upon very young girls will tend to confuse the issues, mislead the jury, or cause the jury to decide the case on an improper emotional basis."). Courts must always remain vigilant when balancing the interest of accuser and accused, particularly when one or more of the parties are juveniles. On this basis, I therefore concur in the majority's judgment.

Wiggins, C.J., joins this special concurrence.